79   621
107   554

CASE 128—JULY, 1881.

# Opinion of the Judges of the Court of Appeals

## ON THE SUBJECT OF THE POWER OF THE GOVERNOR TO FILL VACANCIES BY APPOINTMENT.

The Governor has no power to fill a vacancy in the office of a Judge of the Court of Appeals, unless the unexpired term shall be less than one year, in which case he may fill such vacancy by appointment.

JUDGE HARGIS DELIVERED THE OPINION OF THE COURT.

We have been requested by the Chief Executive of the commonwealth to expound the constitution relative to his power to fill temporarily by appointment a vacancy in the Court of Appeals, where the unexpired term shall be greater than one year.

In construing the sections of the present state constitution which confer upon the Governor the general power to fill vacancies, and to make appointments under specified con-- tingencies, it must be borne in mind that the constitution is to be construed as a frame of government, and its interpre-- tation result, if possible, in a consistent whole.   And the pervading principles of the constitution which it superseded, pertaining to the nature and extent of the power of execu- tive appointment, should be looked into and compared with the theory and spirit of the present instrument on that sub- ject, as the dissimilitude will shed light upon its meaning, and lead to a better understanding of the intention of its framers.

The constitution of 1799 invested the Governor with the power to fill judicial offices by appointment; but the present constitution abrogated that system, and substituted therefor an elective judiciary.

It is said in 3 Metcalfe, 211: "To curtail the power of *appointment* to office by the executive, and to extend the election principle, was one of the leading objects of the authors of the new constitution. This purpose was not more distinctly manifested in the expressions of public sentiment which led to the call of the convention than it has been in the provisions of the instrument itself. Almost all judicial and ministerial offices, as well as many of the executive offices, had been previously filled by appointment.

"The great object of the change in the system was to refer to the people the choice of their officers, of all grades and classes, whether state, district, county, city, or town offices."

The general elective principle manifested by this unsparing change in the organic law is significant, and supports with great force the denial of the power to fill vacancies by executive appointment, unless it be, in every case where it is claimed, shown to exist by some specific clause of the constitution, or through laws enacted in pursuance of, or not inconsistent with, its provisions, or where vacancies are not provided for either by the constitution or legislative enactment.

It is true, whenever a question is addressed *exclusively* to the executive judgment, neither of the other departments of the government can inhibit or control executive action upon such question, and this principle flows from the triune character of our government, by which its sovereignty is confided to distinct coördinate departments, whose officers shall exercise none but the powers of the department to which they belong, unless expressly directed or permitted to do so by the constitution.

This is said to be "perhaps the most conservative pro-vision in our organic law."

And section 9 of article 3 confers upon the Governor, who is the head of the executive department, the general power to fill vacancies, in this language :

"He shall have power to fill vacancies that may occur by granting commissions, which shall expire when such vacan-cies shall have been filled according to the provisions of this constitution."

The language of this section leaves but little room for interpretation.

Its literal meaning seems to be self-explaining, and would doubtless authorize appointments by the Governor to fill vacancies temporarily, in the absence of other provisions of the constitution, or laws passed in pursuance thereof, declar-ing that vacancies shall be filled in a different manner.

But it is a sound rule of construction that the whole in-strument should be examined with a view of arriving at the true intention of each part.

And when we look at the constitution upon the subject of vacancies, it is clear that the power to fill vacancies tempo-rarily under said section, which is not self-executing, was not conferred upon the Governor, to be exercised by him upon his knowledge of the existence of a vacancy, without fur-ther constitutional or statutory authority.

And it will not do to say that unless the power to fill va-cancies temporarily belongs to the Governor in the literal and isolated sense of the section quoted, offices will be with-out incumbents for a time, and the framers of the constitu-tion never intended such a result, because in the very nature of things such a result, to a greater or less extent, is bound

to follow vacancies in any office under any constitution devised by man.

And the framers of our constitution did not rely upon this section alone to supply vacancies temporarily, as is clearly shown by other sections which either provide a different mode in filling them, or plainly negative the necessity therefor.

Section 7 of article 6 provides, that "vacancies in offices under this article shall be filled *until the next regular election* in such manner as the general assembly may provide."

That article concerns "executive and ministerial offices for counties and districts," and designates of those classes the office of commonwealth's attorney, circuit court clerk, county court clerk, county attorney, sheriff, surveyor, coroner, jailer, assessor, and constable, offices for towns and cities, and such county and district ministerial and executive offices as shall be created by the general assembly.

It is plain that the general assembly, and not the Governor, has the power to fill vacancies temporarily in all of those offices "*until the next regular election.*"

By section 35, article 4, the general assembly is directed to provide the mode of filling vacancies in the office of county judge and justice of the peace.

It is also *provided* in section 13, article 4, that when a vacancy shall occur, from any cause, in the office of Clerk of the Court of Appeals, the judges of that court shall have power to appoint a clerk *pro tem.* to perform the duties of the clerk until such vacancy shall be filled.

Section 26, article 8, provides for filling vacancies in state offices in this language: "When a vacancy shall happen in the office of Attorney General, Auditor of Public Accounts, Treasurer, Register of the Land Office, President of the

Board of Internal Improvement, or Superintendent of Public Instruction, the Governor, in the recess of the Senate, *shall have power to fill the vacancy by granting commissions which shall expire at the end of the next session,* and shall fill the vacancy for the *balance* of the time by and with the advice and consent of the Senate."

Thus, by this section, power to fill the vacancy temporarily in those offices, and until the end of the next session of the Senate, is expressly conferred upon the Governor; yet if he had the power under section 9 of article 3 to fill all vacancies until they shall have been filled according to the provisions of the constitution, and its framers had so understood and intended the section, it was wholly unnecessary to confer upon him the power to fill the vacancies in those offices until they shall have been filled by and with the advice and consent of the Senate; and no provision of a solemn written constitution should be held to be purposeless, but each should be given effect, and the whole rendered uniform if practicable.

That the framers of the constitution believed they had invested the Governor with general power to fill vacancies temporarily, with the limitation we have suggested, is strongly evidenced by the fact that they either delegated the power to the general assembly or expressly provided in the constitution itself the manner of filling vacancies temporarily in all of the offices created by the constitution, except Lieutenant Governor, member of the general assembly, circuit judge, and appellate judge.

As to these, the necessity of filling the vacancies temporarily did not exist, nor did the vacancies demand more

expeditious means of filling them than were adopted by the constitution.

Should a vacancy occur in the office of Lieutenant Governor during the recess of the senate, there could be no great necessity for filling the vacancy until the senate over which he presides by virtue of his office should assemble, unless he were acting, or should be called upon to act, as Governor; and in that event the constitution, section 20, article 3, makes it "the duty of the Secretary of State for the time being to convene the senate for the purpose of choosing a speaker." And this construction avoids the possibility of the Governor appointing his own successor.

Section 31, article 2, provides that "the general assembly shall regulate, by law, by whom and in what manner writs of election shall be issued to fill vacancies which may happen in either branch thereof."

And no one certainly would contend that the constitution conferred upon the Governor the power to fill vacancies temporarily in the office of senator or representative, or that it would ever become necessary to do so to constitute a quorum.

Before considering the sections of the constitution, which are in substance the same, relative to the mode of filling vacancies in the office of appellate or circuit judge, we will call attention to the contemporaneous and subsequent practical construction placed upon the provisions of the constitution above mentioned by the legislative department in putting them into operation.

They furnish a most reliable guide in the construction of the extent of the general power conferred upon the Governor to fill vacancies temporarily by section 9 of article 3.

It is provided by section 7, article 6, chapter 33, General Statutes, title "Elections," that a vacancy in the office of Commonwealth's attorney or circuit court clerk shall be *temporarily* filled by the circuit judge until the next succeeding election.

Section 5, *ibid*, directs that a vacancy in the office of sheriff, coroner, surveyor, county court clerk, county attorney, jailer, constable, or assessor, shall be *temporarily* filled by the county court until the next succeeding August election.

Section 8 of the same article requires that a vacancy in the office of county judge shall be filled by the justices of the peace of the county until the next August election.

And even as to vacancies in the office of justice of the peace the legislature, in providing therefor, considered it necessary to the exercise of the power by the Governor to expressly invest him with authority to fill them temporarily until the next succeeding May or August election, and the executive department has uniformly complied with this provision of the law, thereby showing its recognition of the authority of the legislature to enact it.

While "contemporary construction can never abrogate the text, never fritter away its obvious sense, never narrow down its true limitations, and never enlarge its natural boundaries," the practical exposition of section 9, article 3, of the constitution, which the legislature has given by the many provisions for filling vacancies temporarily, sustains the construction of that section we have indicated with a plausibility and strength not easily destroyed.

But we are warned that legislative construction is neutralized by executive interpretation.

The single instance, not to be dignified into a precedent, of the *ad interim* appointment of the late Judge Sampson to fill a vacancy in the Court of Appeals, took place near the close of a power-assuming war, which carried from the military into the exercise of civil authority the example of force and a neglect or disregard of written constitutions.

That instance, without another of like character to support it, and in conflict with the practice of subsequent Governors who expressly refused to exercise the power, although vacancies of the same kind and of equal necessity have occurred, does not furnish such a precedent as should command our implicit confidence in its correctness, which should always exist in a constitutional precedent.

Section 7, article 4, reads: "If a vacancy shall occur in said Court (of Appeals) from any cause, the Governor shall issue a writ of election to the proper district to fill such vacancy *for the residue of the term: Provided,* That if the unexpired term be less than one year, the Governor shall. appoint a judge to fill such vacancy."

In construing this section two well established canons of constitutional construction should be applied: one, that effect must be given to a particular intent plainly expressed in one part of the constitution, though apparently opposed to a general intent deduced from other parts, or, as Judge Story expresses it, "the specification of particulars is the exclusion of generals;" the other, where the whole of a subject is so provided for by a clause of the constitution as to leave no doubt of the manner of its enforcement or the agency designated for that purpose, such subject is placed beyond legislative power or executive control. (Lowe v.. Commonwealth, 3 Met. ; Page v. Hardin, 8 Ben. Mon.)

It will be seen that the Governor is commanded to issue a writ of election to fill the vacancy; that it must go to the district wherein it occurs, and the writ of election must be to fill such vacancy *for the residue of the term.*

And there is no qualification of these plain expressions, except the unexpired term be less than one year, then, and then only, the Governor shall appoint a judge to fill such vacancy.

Whether this provision, while it is being complied with by the Governor and electors of the proper district, will leave any part of the residue of the term without an incumbent, does not destroy the particular intent plainly expressed by the simple language used, and authorize an interpretation of the first clause of the section that will permit some other mode of filling the vacancy *for the residue of the term,* than by writ of election issued by the Governor, and the votes of the free electors of the district wherein it occurs.

And this conclusion is sustained, not only by the elective system inaugurated by the constitution, legislative and executive construction, but by the terms of section 4, article 4, which provide that any three of the Judges of the Court of Appeals may constitute a court for the transaction of business.

And although a vacancy may occur a court still exists, and the absolute necessity for a *pro tem.* judge is thereby avoided.

It may be suggested, however, that two or more vacancies in the court might happen at the same time, and that then the necessity would arise for the action of the Governor under the general power to fill vacancies *ad interim.*

But we ask, why invest the Governor with the power to fill vacancies for the time being, rather than the people?

The answer is, that he can do it more readily than they. Admit that to be true, yet if the framers of the constitution had intended section 9 of article 3 to apply for that reason to a vacancy in the Court of Appeals, they certainly would have specified the time within which the Governor should act, and not left it solely to his discretion, when by a not unreasonable exercise thereof he might deliberate more than six weeks in selecting an incumbent, and when the people can and have acted in that space of time. Besides, the inability to prove a necessity for the Governor exercising the appointing power, not capable of being equally met by the people through an election, it is shown by the constitution that its framers never intended to place the power to constitute *a Court* of Appeals by filling vacancies in any other hands than those of the people. They said there shall be no court with power to transact business with less than three judges. And in all cases that can possibly arise where it might be necessary to the existence of a constitutional court to fill vacancies, the people and not the Governor have been expressly invested with the power under a writ of election to fill them. Under the arrangement of the constitution there cannot be at the same time less than one year unexpired of the term of office of two judges, should they die or resign at the same instant, or even within one year of each other.

Should the office of any one of them become vacant within one year of the expiration of his term, the other judges would each have more than one year to serve; and under the provision of the constitution, "that if the unexpired term be less than one year the Governor shall appoint," it is clear he was not empowered to fill more than one vacancy in the Court of Appeals at the same time, although

two might occur, because his power to appoint is limited to vacancies of less than one year's time.

This exclusion of his power to fill vacancies of more than one year's duration by the express language of the constitution, and the significant organization of the Court of Appeals, gives great force to the thought running through the constitution, that the judiciary shall not be appointed by the executive unless authority to do so is given with particularity.

The legislature, adopting the interpretation of section 7, article 4, we have placed upon it, made an exception to the law fixing the day to be appointed generally by writ or proclamation for holding an election to fill vacancies, and provided the brief space of six weeks, the shortest reasonable time for holding an election to fill a vacancy in the office of Judge of the Court of Appeals, while it fixed a much longer time within which to fill vacancies in less important offices by smaller constituencies occupying a much more limited territory.

If the construction placed on section 7, article 4, by those favoring the exercise of the power to appoint, should be adopted, it would result that the residue of the term, however long the period, could be filled by the appointment of the Governor, as the constitution does not provide *when* the writ of election shall issue.

The Governor might be satisfied with the person appointed, and decline to issue the writ; and in the absence of some legislative enactment designating the period within which such a vacancy shall be filled, the Governor could withhold or issue the writ of election at his pleasure; or he might deny the power of the legislature to direct him when to issue the writ of election, on the ground that the consti-

tution provides the state of case in which he shall issue the writ, and having the power to issue it, claim that his power as to the time and manner of doing so is implied, and beyond legislative regulation.

Construe the clause of section 7, article 4, which directs the Governor to issue a writ of election to fill the residue of the term, as if there had been no legislation in reference to it, and it is evident the authors of the constitution intended to clothe the executive with the power to appoint only when there is less than one year of the term to expire.

The power is expressly limited by the last clause of the section, and the mode of filling the vacancy clearly pointed out in the first.

If it was the purpose to provide for the temporary appointment of a judge to serve until an election should be held, the framers of the constitution would have certainly said so, as they did in other sections, by which they provided for the temporary appointment of state officers, Clerk of the Court of Appeals, and all the executive and ministerial officers for counties and districts.

And, in conclusion, we say: If the existence or nonexistence of the power in question is, or ought to be, determined by the language of section 9, article 3, and of section 7, article 4, without the aids from the various sources to which we have gone, and were they in conflict with each other, the latter must control, as it specifically provides the manner of its enforcement, by whom it shall be done, and regulates the whole subject-matter, and is, equally with the former, the behest of the organic law.

And no department of the government, whether legislative, executive, or judicial, has the power to abrogate the

meaning 'of its terms or establish other modes than those embraced within its fixed limits.

With these expressions of our views of the subject upon which your Excellency has sought our advice, we inclose official notice of the death of our stainless associate, Chief Justice Martin H. Cofer, who was dear to us, and invaluable to the state.