CASE 30—PETITION ORDINARY—MARCH 23.

## Shelley v. McCullough.

APPEAL FROM JEFFERSON CIRCUIT COURT, COMMON PLEAS DIVISION.

1. ELECTIONS TO FILL VACANCIES IN CITY OFFICES.—Section 152 of the Constitution which provides for the filling of vacancies in "all elective offices," applies to offices for towns and cities as well as those for larger territories, and to offices created by the General Assembly as well as to those created by the Constitution. And the provision of section 160 of the Constitution, empowering the

Shelley v. McCullough.

General Assembly to prescribe how vacancies in offices for towns and cities may be filled is to be construed in connection with section 152, and, therefore, can not be regarded as empowering the General Assembly to provide for the filling of such vacancies for a longer time than is provided by that section.

Section 2791 of the Kentucky Statutes (part of the charter of cities of first-class), which provides that it shall be the duty of the Mayor to fill "all vacancies in executive and ministerial offices not herein otherwise provided for," does not, when considered in connection with the provisions of the Constitution, authorize the Mayor to fill such vacancies for the whole of the unexpired term without regard to when the vacancy occurred. Therefore, a vacancy in the office of tax receiver occurring more than three months before the next general election, the Mayor had power to appoint only until that election and not for the whole of the unexpired term.

2. A VACANCY IN A CITY OFFICE MAY BE FILLED AT THE NEXT SUC-CEEDING ELECTION, as provided by section 152 of the Constitution, although city officers are not then to be elected; though it may be that a vacancy in an office for a larger territory could not be filled at an election at which city officers only were to be elected.

3. SIMULTANEOUS HOLDING OF CITY AND CONGRESSIONAL ELECTIONS.— Section 148 of the Constitution, which prohibits the simultaneous holding of city and congressional elections, does not prohibit the filling of a vacancy in a city office at the time of a congressional election.

KOHN, BAIRD & SPINDLE FOR APPELLANT.

1. If an election was not demanded in November, 1894, by any law then in existence, the election of appellee was wholly void. There can be no estoppel in a matter of public right. (Payne on Elections, sec. 214, p. 185 and authorities there cited.)

2. Under the old Constitution the Legislature had absolute control over municipal offices. (Third Constitution of Ky., art. 6, secs. 6, 7; Police Commissioners v. City of Louisville, 3 Bush, 599; Speed v. Crawford, 3 Met., 211; Paducah v. Cully, 9 Bush, 325; Williams v. Newport, 12 Bush, 439; Buckner v. Gordon, 81 Ky., 667; Barnett's Code of Louisville, pp. 464, 466, 472, 785.)

3. Vacancies in city offices can be filled by appointment. (Constitution of Ky., sec. 160; Barbour & Carroll's Statutes, secs. 2788, 2791, 2904; 19 Am. & Eng. Enc. of Law, pp. 416, 417, 430; People v. Comstock, 78 N. Y., 358; Sturgis v. Spofford, 45 N. Y., 449; State v. Covington, 29 Ohio St.; State v. Glenn, 7 Heisk. 481: Debates of Const. Convention, pp. 2918, 2986.)

Shelley v. McCullough.

4. City officers can be elected only in odd years. (Constitution of Ky., secs. 167, 148; Constitutional Debates, vol. 2, 1939, 1981, 2080; Berry v. McCollough, 15 Ky. Law Rep., 117.)

5. If doubt exists statute is to be held constitutional. (Lexington v. McQuillan, 9 Dana, 513; Louisville v. Hyatt, 2 B. Mon., 178; Collins v. Henderson, 11 Bush, 74.)

ZACK PHELPS ON SAME SIDE.

Section 152 of the Constitution did not provide for *all vacancies,* but expressly announced that it was subject to exceptions, section 160 being the exception. So that section 160 required or commanded the Legislature to pass the charter and provide for the filling of vacancies in city offices, or, in other words, gave the fullest authority to the Legislature to do it, and made it incumbent on the Legislature to do so and allowed them to regulate the subject in any way they chose, but with the restriction that the election should not be in the same year as the election of a congressman. (Constitution, sec. 148). And with the further restriction that an election to fill a vacancy must be in an odd year.

The General Assembly had full power to regulate the matter, subject only to these restrictions. (Constitution of Ky., secs. 98-160, 167; Debates of Constitutional Convention, pp. 2911, 2915, 2916, 2918; secs. 28 and 119 of City Charter of 1894; Ky. Stats., secs. 1521 and 1522; Park Act, sec. 81 of City Charter; Berry v. McCollough, 15 Ky. Law Rep., 117.)

BURTON VANCE FOR APPELLEE.

1. The tax receiver of the city of Louisville is an "elective" officer, to be elected by the people every four years, commencing with the election of November, 1893. (Constitution 167, Statutes 2904, 2784.)

2. The tax receiver elected in November, 1893, dying in December, 1893, a vacancy was created in the office which the Mayor was required to fill by appointment with the consent of the Board of Aldermen, until the "next succeeding annual election." (Statutes, 2791; Constitution, 152.)

3. By the phrase "next succeeding annual election" is meant the next election at which candidates for any of the offices mentioned in sec. 152 are to be voted for by the people.

4. There can be but one election each year. (Constitution, 148.)

5. No officer of any class mentioned in sec. 152 is elected annually, and there can be no annual election in any class. (Constitution, secs. 91 to 99, 112-115, 31-97, 160-167; Statutes, 2784, 2904, 2768.)

6. "Next succeeding annual elections" can not mean biennial, triennial or quadrennial elections, because that would be to wholly ignore the plain meaning of the word "next," "succeeding" and "annual." Every word in the organic law must be given effect.

7. The title of the Constitution "Suffrage and Elections" embracing secs. 145-155 inclusive, govern elections for city officers to exactly the same extent they do county, State and district officers. Note the frequent use of the word "city" in secs. 147,158,152. Also the exact phrase in sec. 148 used in 152 "city, town, county, district."

8. The exception of school trustees by sec. 155, from the operation of 152 is in effect the express declaration of the inclusion of all other offices.

9. Title "Municipalities" does not provide a complete system of election laws for city officers, nor are its provisions exclusive of the provisions of title "Suffrage and Elections," but subordinate thereto and must be construed in harmony therewith.

10. The concluding sentence of sec. 160 confers upon the Legislature power to provide by law how the "appointive" part only of vacancies in city offices shall be filled. Compare with the like provision in section 152 following the general provisions for filling the "elective" part of a vacancy.

11. Section 2791 confers upon the Mayor only power to appoint for the appointive period *created by* sec. 152. Compare language of 2791 with like provisions as to Governor in 152.

12. The Constitutional Convention intended sec. 152 to control elections to fill all vacancies. (See Debates, vol. 2, 1945-2194; vol 4, 5242-5955.)

13. Sections 148 and 167 in prohibiting the holding of city elections at same time with congressional elections and in even years refer only to elections for "full terms." Otherwise, it would be impossible in many cases, to conform to the provisions of sec. 152, requiring election to fill vacancies to be held at the next succeeding annual election. (Berry v. McCollough, 94 Ky., 247.)

AUGUSTUS E. WILLSON AND HELM & BRUCE OF COUNSEL ON SAME SIDE.

JUDGE HAZELRIGG DELIVERED THE OPINION OF THE COURT.

At the November election, 1893, one Jas. J. Shelley was elected to the office of tax receiver of the city of Louisville for the term of four years. Within a month after his

election he died, and his brother, the appellant, was appointed by the mayor and the general council to fill the vacancy.

At the approaching November election, 1894, the appellant became the Democratic nominee for the office, and the appellee the Republican nominee. The race resulted in the election of the appellee, but the appellant declining to vacate the office, this action was instituted against him by the appellee to prevent an alleged usurpation of the office and to have himself adjudged its lawful incumbent.

Judgment resulted for the appellee.

It is the contention of the appellant first, that notwithstanding his original belief that his appointment lasted only until the election of 1894, it, in fact, invested him with the office for the whole of the unexpired term, or if not, second, that it did so at least until the next regular election, at which, under the constitution, city officers could be elected, which would be in November, 1895.

His first proposition, stated generally, is that the constitution, whatever may be its provisions as to other offices and filling vacancies therein, expressly declares under the appropriate head of "Municipalities" that officers of cities and towns, other than certain ones not now necessary to mention, "shall be elected by the qualified voters therein, or appointed by the local authorities thereof, as the General Assembly may, by a general law, provide," and that such assembly "shall prescribe the qualifications of all officers of towns and cities, the manner in and causes for which they may be removed from office, and *how vacancies in such offices may be filled.*" (Section 160.)

That in the exercise of this right, the General Assembly provided (section 2904 Kentucky Statutes), that a tax receiver should be elected in November, 1893, by the quali-

fied voters of the city of Louisville for the term of four years, and no special or other provision for filling the office in case of the death, removal, etc., of the receiver being made by the statute, the duty was imposed on the mayor (section 2791) "to fill, with the consent of the board of aldermen, all vacancies in executive and ministerial offices not otherwise provided for." That the mayor's appointment "to fill the vacancy in the office occasioned by the death of James J. Shelley" was therefore in all respects in conformity with the constitution and the statutes, and invested him with the office for the unexpired term. It is manifest that if there are no other provisions of the constitution regulating the filling of vacancies in city offices which are elective under the constitution, or become so by the action of the local authorities in virtue of some general law, then the argument of counsel for appellant must be conceded to be sound, for the power conferred by the General Assembly on the mayor "to fill all vacancies in executive and ministerial offices" would seem to fall clearly within the constitutional right given the General Assembly to prescribe "how vacancies in such offices may be filled." Or in other words, if the mayor may exercise this power unaffected by any provision of the law other than is found in the provisions of the constitution and statutes indicated, then the filling of the vacancy must be held to mean the filling of it for the entire unexpired term.

The section of the constitution relied on to authorize the regulation and control of these offices by the legislature is as follows:

"Sec. 160. The mayor or chief executive, police judges, members of the legislative boards or councils of towns and cities shall be elected by the qualified voters thereof: Provided, the mayor or chief executive and police judges of the

towns of the fourth, fifth and sixth classes may be appointed or elected as provided by law. ' The terms of office of mayors or chief executives and police judges shall be four years, and until their successors shall be qualified; and of members of legislative boards, two years.   *   *   * But other officers of towns or cities shall be elected by the qualified voters therein, or appointed by the local authorities thereof, as the General Assembly may, by a general law, provide; but when elected by the voters of a town or city, their terms of office shall be four years, and until their successors shall be qualified.   *   *   The General Assembly shall prescribe the qualifications of all officers of towns and cities, the manner in and causes for which they may be removed from office, and how vacancies in such offices may be filled."

And the statute enacted in the exercise of this constitutional authority reads thus:

"Section 2791., It shall be the duty of the mayor, *   *   * 4. To fill, with the consent of the board of aldermen, all vacancies in executive and ministerial offices not herein otherwise provided for."

The statute creating the office in question is as follows:

"Sec. 2904. There shall be elected by the qualified voters of the city at the time and places provided for the election of mayor, a tax receiver who shall collect all city taxes except such as are to be collected by the sinking fund. * * * He shall settle his accounts with the mayor, comptroller, auditor and treasurer on or before the last day of October in each year for the taxes for which bills have been placed in his hands for collection for the year; and if, through his fault, a quietus therefor is not held by said receiver on said day, the general council shall, by resolution, declare vacant the office of such receiver, and the vacancy shall be filled

by the general council in joint session, by *viva voce* vote, for the unexpired term."

So that, taking these provisions together, we have, it is contended, the constitutional investment of the General Assembly with the power to create the office of tax receiver and determine whether it shall be an elective or an appointive office, to prescribe the duties and qualifications of the officer, and to provide how vacancies therein may be filled.

We have, too, the exercise of that power by the General Assembly—the creation of the office, the prescription of the duties pertaining thereto, the enactment that it shall be an elective office, and the provision that a vacancy therein caused by removal for cause shall be filled by the general council for the unexpired term, and in other cases by the mayor; and thus is completed, according to the appellant's contention now under consideration, his title to the office in question.

We have thus elaborated the contention of learned counsel for the appellant on the point now involved, because we wish to be understood as fully appreciating its force. But while admitting the plausibility of the argument, we have reached a different conclusion.

We have seen that the soundness of the appellant's construction of the constitution depends on the existence or non-existence of other modifying or controlling provisions of that instrument. That section 152 thereof does affect and control the question involved we can not seriously doubt. This section is under the title "Suffrage and Elections."

Under this title the questions indicated are treated not with reference to any particular division or subdivision of

the State, but the subjects sought to be affected are gen-
·eral and universal.

The qualifications of the voter as prescribed therein are of
universal application. State elections, district elections,
·county, town and city elections are alike provided for. As
for cities of a certain population, registration is provided.
More than one election each year is not to be held in the
State or in any city, town, district or county except as spec-
ially provided for. In such company we find section 152,
which reads as follows:

"Except as otherwise provided in this constitution,
vacancies in all elective offices shall be filled by election or
appointment, as follows:

"If the unexpired term will end at the next succeeding
annual election at which either city, town, county, district,
or State officers are to be elected, the office shall be filled
by appointment for the remainder of the term. If the un-
expired term will not end at the next succeeding annual
election at which either city, town, county, district, or State
officers are to be elected, and if three months intervene be-
fore said succeeding annual election at which either city,
town, county, district, or State officers are to be elected, the
office shall be filled by appointment until said election, and
then said vacancy shall be filled by election for the remain-
der of the term. If three months do not intervene between
the happening of said vacancy and the next succeeding
election at which city, town, county, district or State
officers are to be elected, the office shall be filled by appoint-
ment until the second succeeding annual election at which
city, town, county, district or State officers are to be elect-
ed; and then, if any part of the term remains unexpired,
the office shall be filled by election until the regular time
for the election of officers to fill said offices.

"Vacancies in all offices for the State at large, or for districts larger than a county, shall be filled by appointment of the Governor; all other appointments shall be made as may be prescribed by law. No person shall ever be appointed a member of the General Assembly, but vacancies therein may be filled at a special election, in such manner as may be provided by law."

The question is, does this section apply to or affect the filling of vacancies in the elective offices of towns and cities? It seems to us to state the question is to answer it so far at least as those offices are concerned which are elective under the constitution. Certainly the filling of vacancies in some city or town offices is contemplated in the distinct and oft-repeated references in the section to elections "at which *either* city, town, county, district or State officers are to be elected."

There may be a difference of opinion as to how the words "the next succeeding annual election" are to be construed, whether referring to an election in the particular class of offices to which the one belongs in which the vacancy exists, and to fill which the election is to be held, or whether the office in which the vacancy exists may be filled at *either* a city, town, county, district or State election, succeeding the time when the vacancy occurs.

But that the filling of vacancies in elective offices in towns and cities is provided for in this section can not be doubted. But it is thought that the requirements of this construction of the section are met if we say that the "elective offices" named in the section are those which are required to be elected in express terms by the constitution, and not those which may become elective or not at the option of the General Assembly, and so reasoning, the conclusion is reached that vacancies in those offices which are not re-

quired to be elected by the organic law, are to be filled as
may be prescribed by the General Assembly, under the pro-
visions of section 160.   It seems to us there are several ob-
jections to this construction.

By the terms of section 160, only mayors and police
judges of the first, second and third classes are required to
be elected by the qualified voters.   The mayors and judges
of all other towns and cities, and all other officers of any of
the classes, may be elected or appointed as may be provided
by general law, and in view of this it seems hardly probable
that a law on the subject of vacancies, evidently intended to
be a comprehensive and general one, should fail to include
by far the greater number of instances where its applica-
tion would be equally desirable.   For the sake of uniform-
ity, if for no other, it would seem that the language of the
section "vacancies in *all* elective offices" should be held to
include not only those offices which are declared to be "elec-
tive" under the express terms of the constitution, but also
those which may become so by some general law.  Moreover,
it must be borne in mind that although the general law may
make these offices elective by the qualified voters, the con-
struction contended for allows the local authorities to fill
the vacancy, not temporarily or until a succeeding election,
but for the whole of the unexpired term.   The present case
illustrates the length to which the appointive term in an
elective office may be stretched under the contention that
forbids the application of section 152 to all elective offices.

Again, the framers of the constitution knew that by the
same instrument in which they used the language "all elec-
tive offices" they had empowered the General Assembly to
provide by general laws possibly for the election of all the
offices of towns and cities in the Commonwealth save those
expressly provided for in the constitution itself, and we

think it fair to conclude that in section 152 they had in mind the filling of vacancies in the offices to be thus made "elective."

Again, the language of section 160, relied on by the appellant, is not susceptible of the construction contended for.

The provision is: "The General Assembly shall prescribe the qualifications of all officers of towns and cities, the manner in and causes for which they may be removed from office, and how vacancies in such offices may be filled."

The provision by its very terms includes all officers of cities and towns, and if the construction contended for be adopted, the General Assembly may provide for the filling of vacancies by appointment if it please, in the offices of mayors and police judges of cities of the first, second and third classes as well as those of the remaining classes, though we have seen that section 152 requires at least that these elective offices shall be filled by appointment only until a succeeding annual election.

Whatever, therefore, the provision may mean, it does not mean what the language might import on its face. It is our opinion that the intention was to confer on the General Assembly simply the power to provide how the vacancies in these offices may be temporarily filled, and also by whom they may be filled.

So we find in section 152 this language: "Vacancies in all offices for the State at large or for districts larger than a county, shall be filled by appointment of the Governor." This language imports on its face the power of the chief executive to fill vacancies in offices for the unexpired terms thereof which we know he may fill only temporarily and until the next succeeding annual election after the happening of the vacancy.

The power given is not to fill the vacancy, in the ordinary

acceptation of the words, but to fill only the appointive part thereof.

By placing the sections in juxtaposition this construction becomes apparent:

"Sec. 152. *  *  * Vacancies in all offices for the State at large or for districts larger than a county shall be filled by appointment of the Governor."

"Sec. 160. *  *  * The General Assembly shall prescribe the qualifications of all officers of towns and cities, *  * and how vacancies in such offices may be filled.".

Both of these provisions apply only to the filling of the appointive part of the vacancy, and by the statute relied on (sec. 2791), the legislature conferred on the mayor only the power to appoint until the next succeeding annual election and not for the full term.   Much, however, has been made of the language in section 152, "except as otherwise provided in this constitution," and it is contended that the provisions of section 160, and particularly that portion which confers the power on the General Assembly to prescribe how vacancies in city offices may be filled, furnish the exceptions to the general rule laid down in section 152.

We may observe that by other provisions of the constitution, the rule in section 152 is not followed in filling vacancies.   Thus the Governor's office is filled in a different way, so also the offices of members of the General Assembly.

If, however, we insert the supposed exception in section 152, we shall see the fallacy of counsel's argument.   The section would then in substance provide, so far as towns and cities are concerned, that "vacancies in all elective offices in towns and cities shall be filled by temporary appointment and then by election at the succeeding annual elections therein, except that the General Assembly shall prescribe how such vacancies shall be filled," which is a manifest absurdity

on its face.   If, however, the words in section 160 be con-
strued to give the General Assembly power to provide for
filling such vacancies temporarily, all difficulty at once van-
ishes.

It is true that in section 152, after the provisions giving
the Governor power to fill certain vacancies temporarily, we
find this language:   "All other appointments shall be made
as may be prescribed by law," and this would seem to be
broad enough to authorize the General Assembly to provide
by law for the temporary filling of such vacancies not only
in county and district offices, when the districts were not
larger than a county, but also in towns and cities.   So that,
the clause in section 160 to the same effect would appear to
be a repetition.   But the clause in 160 is not to the same
effect.

As we have seen, section 152 applies alone to elective
offices, and the words "all other appointments" mean "all
other appointments to fill vacancies in elective offices," but
when the framers of the constitution came to provide for
city officers in detail, they knew many of them would be ap-
pointive, hence the necessity of providing a mode of filling
vacancies therein.   The provision, so far as it again confers
authority on the legislature to provide for filling vacancies
in elective offices, was unnecessary, but the provision was
necessary for other purposes, and no harm results if in mak-
ing the necessary provision, the language used appropriately
confers a power already elsewhere conferred.

The second contention of the appellant is that even if the
office of tax receiver be an elective office within the mean-
ing of the constitution, and a vacancy therein is to be filled
as provided in section 152, yet the election to fill the vacancy
could not be held until in November, 1895:   First, because
there was no election of city officers in November, 1894, and

that a fair construction of the section requires that the vacancy in any given office should be filled at the succeeding election at which officers of the same class are to be elected. We think the language of the section disposes of this contention. The vacancy is to be filled "at the next succeeding election at which *either* city, town, county, district or State officers are to be elected." To illustrate, we know of no elective office in the State save that of Governor in which if there was a vacancy more than three months prior to the election of 1895, there might not then be an election to fill it.

There will be at that time an election held in every county in the State for members of the General Assembly and for railroad commissioners, thus embracing the territorial limits of the State. Unless the territorial limits of the particular office to be filled were embraced by that of the nearest succeeding election, the rule might be different. For example a vacancy in a State office would not be filled at a succeeding election in which only city officers were to be elected. The second reason for the contention that the office of tax receiver could not be filled at the election of 1894, is that at that time members of Congress were elected, and section 148 of the constitution prohibits the simultaneous holding of city and congressional elections.

That section provides that "not more than one election each year shall be held in this State or in any city, town or district, or county thereof, except as otherwise provided in this constitution. All elections of State, county, city, town or district offices shall be held on the first Tuesday after the first Monday in November; but no officer of any city, town, or county, or of any subdivision thereof, except members of municipal legislative boards, shall be elected in the same year in which members of the House of Representatives of the United States are elected.

"District or State officers, including members of the General Assembly, may be elected in the same year in which members of the House of Representatives of the United States are elected."

We think it manifest that this section, general in its nature, was intended to apply to the regular election of the officers of the classes named and not to elections for filling vacancies. Otherwise there would be a conflict between it and section 152 providing for the filling of vacancies. For not only in 1894 when congressmen were elected was there an election at which under the express terms of section 152 the vacancies in city offices might be filled, but hereafter in even years there will be elections in the appellate districts of the State and in the railroad commissioners' districts at which such vacancies may be filled if effect be given to the express language of section 152.

As there is no inhibition against the holding of district and State elections at the same time congressmen are elected, and as under section 152, vacancies in city and county offices may be held at such district and State elections, we conclude that section 148 applies only to the ordinary elections for full terms.

And so with respect to section 167, it is provided that in 1893, and thereafter as their *terms of office may expire*, city and town officers are to be elected as provided by law but only in odd years, the section manifestly applying to elections held upon the expiration of the regular terms of office.

It may be observed that in the main, the various legislative enactments for filling vacancies in the elective offices of the cities and towns of the Commonwealth conform to the construction adopted in this opinion. To the extent that they differ from it they may easily be adjusted.

The judgment below is affirmed.