CASE 88—ON MOTION TO REINSTATE AN INJUNCTION—JAN-
UARY 16.

# Poyntz, Etc. v. Shackelford.

ON MOTION TO REINSTATE INJUNCTION.

1. CONSTITUTIONAL LAW—ELECTION COMMISSIONERS.—The act of
March 11, 1898, entitled "An act to further regulate elections,"
authorizing the Board of Election Commissioners to fill vacan-
cies in its own body is not a violation of those provisions of the
Constitution, prescribing how vacancies may be filled and confer-
ring on the Governor the power to fill vacancies.

2. INJUNCTION—IN PROTECTION OF PUBLIC OFFICIALS.—Where an offi-
cer in the rightful possession of his office, is molested or inter-
fered with in the discharge of his official duties and to the detri-
ment of the public business, he is entitled to an injunction
against interference with him in the performance of such duties.

3. SAME—GRANTING AND DISSOLVING IN SAME ORDER.—An order grant-
ing an injunction and dissolving same in the same order on the
judge's own motion will be treated as if an injunction had been
in force and then dissolved; and an application may then be
made to a judge of this court for reinstatement.

JUDGES GUFFY, DuRELLE AND BURNAM DISSENTING.

LEWIS McQUOWN, JOHN K. HENDRICK, W. S. PRYOR, ZACK
PHELPS, AARON KOHN AND J. A. SCOTT FOR PLAINTIFFS ON MO-
TION TO REINSTATE.

W. O. BRADLEY, W. H. YOST AND T. L. EDELEN AGAINST THE MO-
TION.

(No briefs on file on either side.)

CHIEF JUSTICE HAZELRIGG DELIVERED THE OPINION OF THE COURT.

By averments to the effect that they were the rightful
Board of Election Commissioners, selected and appointed
in pursuance of the provisions of the present election law,
(section 1596a, Kentucky Statutes), and that the defendant
Shackelford, clerk, was about to qualify his co-defendants,
Mackoy and Cochran, as members of that board, and the

latter were about to enter upon the discharge of their al-
leged duties as such members, and thus interfere with the
rightful possession of the office and discharge of its du-
ties by them, the plaintiffs sought to enjoin the defend-
ants from such alleged interference, and to that end, after
notice, applied to the judge of the Fourteenth Judicial
District for an order of injunction of the character indi-
cated.

The chancellor, upon hearing, granted the injunction;
but in the same order, and to the end, as held by him,
that an application might, in view of the grave
matters involved, be had at once to a judge or
judges of the Court of Appeals for a reinstatement of the
injunction, dissolved it, with leave to apply for its rein-
statement as is provided by law. Hence this application
to this court for reinstatement.

The plaintiff Poyntz is a member of the State Board by
election or selection of the General Assembly. His as-
sociate plaintiffs, Fulton and Yonts, were appointed such
members by him upon the retirement of the two mem-
bers (Pryor and Ellis) who had originally been members
of the board.

It is agreed that the vacancies on the board created
by the retirement of Pryor and Ellis were filled by Poyntz
in accordance with the requirements of the election law.
The defendants Mackoy and Cochran are the appointees
of the Governor on the said board, and are entitled to their
respective offices, as they claim, in virtue of that appoint-
ment. The clerk, Shackelford, is a nominal party merely.

Aside from some preliminary questions to be considered
later on, the vital matter in dispute is, has the Governor,
under the Constitution and the law, the right to appoint
to membership on the State Board, or did that right de-

volve on Poyntz, the remaining member, in pursuance to the provisions of the statute?

The competency of the Legislature to create the Election Board, and select its members, admittedly is settled in the Purnell-Mann Case, 20 Ky. L. R., 1146, [48 S. W., 407], where the constitutionality of the act conferring such power on that body was carefully considered and upheld.

When the force of this adjudication is considered, it can hardly be argued seriously that the Legislature is lacking in power to provide how vacancies in their creature, the board, may be filled. Legislative competency to create the board and fill it implies legislative competency to provide how vacancies on the board may be filled.

But, while such power may exist in the abstract, the right to fill such vacancies may be denied to the Legislature because of some provision of the organic law conferring that right elsewhere; and that such right has been vested by the Constitution on the Governor exclusively is the contention of the defendants.

The right of the Governor to fill the vacancies is sought to be upheld by reference to section 152 of the Constitution, which is as follows:

"Section 152. Except as otherwise provided in this Constitution, vacancies in all elective offices shall be filled by election or appointment, as follows:

"If the unexpired term will end at the next succeeding annual election at which either city, town, county, district, or State officers are to be elected, the office shall be filled by appointment for the remainder of the term. If the unexpired term will not end at the next succeeding annual election at which either city, town, county, district, or State officers are to be elected, and if three months in-

tervene before said succeeding annual election at which
either city, town, county, district, or State officers are to
be elected, the office shall be filled by appointment until
said election, and then said vacancy shall be filled by elec-
tion for the remainder of the term.  If three months do
not intervene between the happening of said vacancy and
the next succeeding annual election at which city, town,
county, district, or State officers are to be elected, the
office shall be filled by appointment until the second suc-
ceeding annual election at which city, town, county, dis-
trict or State officers are to be elected; and then if any
part of the term remains unexpired, the office shall be
filled by election until the regular time for the election
of    officers    to    fill    said    offices.    Vacancies    in    all
offices    for    the    State    at    large,    or    for    districts
larger   than   a   county,   shall   be   filled   by   appointment
of   the   Governor;   all   other   appointments   shall   be
made as may be prescribed by law.  No person shall ever
be appointed a member of the General Assembly, but va-
cancies therein may be filled at a special election, in such
manner as may be provided by law."

We think the meaning of this section is quite plain.
Whenever a vacancy occurs in an elective office, it is to
be filled by appointment.  If the unexpired term ends at
the next succeeding annual election at which either city,
town, county, district or State officers are to be elected,"
the appointment will last for the remainder of the term.
If the unexpired term does not so end, and three months
intervene from the time the vacancy occurs until the suc-
ceeding annual election of the description named, then
the vacant office is to be filled by appointment until the
said succeeding annual election.  But, if three months
do not so intervene, the office is to be filled by appoint-

ment until the second succeeding annual election of the description named, and then the office is to be filled by an election of the people for the remainder, if there be any remainder, of the term.

But it will be seen at once that, so far, the very purpose announced at the threshold of the section, of telling us the method of filling "vacancies in all elective offices," remains unfulfilled in a most important particular.

It is true we have been told, as already said, that, in all cases of vacancies, appointments shall be made filling them, and we have been told how long such appointments shall last. But the question *who* shall make these appointments for filling these elective offices when vacancies occur remains wholly unanswered. The section then naturally proceeds to complete its mission. And we learn that vacancies in all offices for the State at large, or for districts larger than a county, shall be filled by appointment of the Governor, and that all other appointments shall be made as may be prescribed by law.

The first sentence of the section declares the purpose of the section to be to provide for the filling of vacancies in all *elective* offices, and that this was to be done by election and appointment. We are then told *when* elections may be held to fill these vacancies, and to *what time* appointments will run; and in the last clause we are told by *whom* these appointments are to be made. The first clauses tell us *how long* the appointees hold; the second clauses, *by whom* the appointments are made.

This plain and natural meaning of the section was recognized,—indeed, announced,—in unequivocal terms by this court in the case of Shelley v. McCullough, 97 Ky., 164, [30 S. W., 193].

In that case we had under consideration sections 152 and

160 of the Constitution particularly as affecting the fill-
ing of vacancies of city offices.  It was contended by coun
sel that section 160 conferred on the General Assembly
plenary power to provide how vacancies in town and city
offices, whether elective or appointive, may be filled.

We held, however that it was the intention by this sec-
tion (160), "to confer on the General Assembly simply the
power to provide how the vacancies in these offices may
be temporarily filled, and also by whom they may be fill-
ed;" and we further said:

"So we find in section 152 this language: 'Vacancies in
all offices for the State at large or for districts larger
than a county, shall be filled by appointment of the Gov-
ernor.' "

"This language imports on its face the power of the
chief executive to fill vacancies in offices for the unexpired
terms thereof, which we know he may fill only tempora-
rily, and until the next succeeding annual election after
the happening of the vacancy.  The power given is not
to 'fill the vacancy,' in the ordinary acceptation of the
words, but to fill only the appointive part thereof."

Proceeding further we said:

"By placing the sections in juxtaposition, this construc-
tion becomes apparent: 'Section 152. . . .. Vacancies
in all offices for the State at large or for districts larger
than a county shall be filled by appointment of the Gov-
ernor.' 'Section 160. . . .  The General Assembly shall
prescribe the qualifications of all officers of towns and
cities, . . . and how vacancies in such offices may be
filled.'  Both of these provisions apply only to the filling
of the *appointive* part of the vacancy."

And again we said:

"As we have seen, section 152 applies alone to elective

offices, and the words 'all other appointments' mean all other appointments to fill vacancies in elective offices. . . ."

Thus it has been authoritatively determined that the words in section 152, "vacancies in all offices for the State at large or for districts larger than a county shall be filled by the Governor; all other appointments shall be made as may be prescribed by law,"—have reference to vacancies in *elective* offices, the *appointive* part only of which may be filled temporarily, in the one case, by the Governor, until the next succeeding annual election by the people, and, in the other case, by the General Assembly prescribing how this appointive part of the term may be temporarily filled.

We conclude, therefore, that this section does not touch or affect the question of filling vacancies in *appointive* offices, and is wholly irrelevant to the issue here involved.

The remaining section of the Constitution relied on to invalidate the statute under which the plaintiffs hold is as follows:

"Section 76. He [the Governor] shall have the power, except as otherwise provided in the Constitution, to fill vacancies by granting commissions, which shall expire when such vacancies shall have been filled according to the provisions of this Constitution."

This section is found in that division of the Constitution relating to the executive department and the general grant of power to it. The preceding sections provide that the supreme executive power of the State shall be vested in a chief magistrate, who shall be called the Governor; that he shall be elected for a term of four years, and be ineligible thereafter; that he shall be at least thirty years old, shall enter on his office the fifth Tuesday after

his election, and shall be commander in chief of the military forces of the State. Then follows the section above quoted.

By its provisions, it confers only power to fill vacancies by granting commissions which shall expire when the vacancies shall be filled according to the provisions of the Constitution. It can not, of necessity, have any application to vacancies in office for the filling of which no provision is made in the Constitution; for, as to such offices, there would be no period at which the commissions granted by the Governor would expire.

It does not, therefore, apply to the offices in question, unless there is some other provision in the Constitution directing how vacancies in them shall be filled. The only other provision of that instrument respecting vacancies is that of section 152, which, as we have seen, does not affect the filling of vacancies in other than elective offices, and the offices in dispute are not of that class.

In our opinion, the section is in fact merely an abstract and general grant of power to the Governor to fill vacancies by granting commissions which should expire when the vacancies should be filled according to the provisions of the Constitution.

It was not supposed by the framers of the Constitution that by this general grant of power they had invested the Governor with the right to fill any specific vacancy; for, as we have seen, in the only other section of the Constitution on that subject (152), they provided that vacancies in State offices and for districts larger than a county should be filled by the appointment of the Governor,—a wholly useless provision, if the right theretofore had been conferred on him under section 76. As a matter of fact, this

section 76 is a copy substantially of section 9, article 3, of the old Constitution. That section is as follows:

"He shall have power to fill vacancies that may occur by granting commissions, which shall expire when such vacancies shall have been filled according to the provisions of this Constitution."

In 1881 it became necessary to consider the power of the Governor, under this section, to fill temporarily a vacancy on this bench caused by the death of one of the judges.

This court said (Opinion of the Judges, 79 Ky., 623) that the section confers on the Governor as the head of the executive department, "the general power to fill vacancies;" that its *literal* meaning would doubtless authorize appointments by the Governor to fill vacancies temporarily, in the absence of other provisions of the Constitution or laws passed in pursuance thereof; but, looking to the whole instrument, the court said:

"And, when we look at the Constitution upon the subject of vacancies, it is clear that the power to fill vacancies temporarily under said section, which is not self-executing, was not conferred on the Governor to be exercised by him upon his knowledge of the existence of a vacancy, without further constitutional or statutory authority; and it will not do to say that, unless the power to fill vacancies temporarily belongs to the Governor, in the literal and isolated sense of the section quoted, offices will be without incumbents for a time," etc.

And the court, referring to section 26, article 8, of the old Constitution, providing for filling vacancies by the Governor in certain State offices in the recess of the Senate, said:

"Thus, by this section, power to fill the vacancy temporarily in those offices, and until the end of the next

session of the Senate, is expressly conferred upon the Governor; yet if he had the power, under section 9, article 3 (section 76 now), to fill vacancies until they shall have been filled according to the provisions of the Constitution, and its framers had so understood and intended the section, it was wholly unnecessary to confer upon him the power to fill vacancies in those offices until they shall have been filled by and with the advice and consent of the Senate."

And the court further illustrated its conclusion that section 3, article 9, was not self-executing, and was not a grant of specific power to fill vacancies, by referring to the statutes providing that vacancies in the offices of Commanwealth's Attorney and circuit court clerk were to be filled *temporarily* by the circuit judge; that vacancies in the offices of sheriff, coroner, surveyor, county court clerk, etc., should be temporarily filled by the county court, etc. The exercise of the right to fill these vacancies by these various tribunals was in the face of the constitutional provision apparently, though not really, conferring that power on the Governor.

We think the new section confers no other or greater power on the Governor than the old section, and it does not, in any event, confer the right on him to fill the vacancies in the appointive offices in dispute, in the face of the statute providing otherwise.

We have thus disposed of the provisions of the Constitution supposed to affect the question before us.

Incidentally, though not less earnestly, counsel for defendants insisted in the argument that injunction was not the proper remedy. We think, however, that when an officer, in the rightful possession of his office, is molested or interfered with in the discharge of his official

duties, and to the detriment and hurt of the public business, this form of action is proper. We so said in the recent case of Weaver, &c. v. Toney, 21 Ky. L. R., 1157, [54 S. W., 732]. See, also, 2 High on Injunctions, section 1315; Brady v. Sweetland, 13 Kan., 43; Kerr v. Trego, 47 Pa. St., 295; 5 Am. & Eng. Dec. Eq., p. 549.

Thus, the learned author of the work last referred to says, in his notes to White vs. Butler, 171 U. S., 379:

"An injunction will lie, however, to restrain the exercise of the duties of an office, or to prevent interference therewith, whenever the interests of the public require it. Thus, a *de facto* officer in possession under color of right is entitled to an injunction to restrain another claimant from interfering with his enjoyment of a performance of the duties of the office, pending litigation to establish the right thereto, or, if no litigation be pending, until the claimant shall have established his right at law. Huntington vs. Cash, 149 Ind., 255; Braidy vs. Therit, 17 Kan., 468; Guillotte vs. Poincy, 41 La. An., 333; Reevielin vs. Mosby, 47 Ohio St., 570; &c."

And the same author, in his notes to Fesler vs. Brayton (Ind. 1896), 3 Am. & Eng. Dec. in Equity, 439, says:

"Equity can not try the title to office in a direct proceeding, but when the question arises collaterally it will assume jurisdiction over it and decide it. Accordingly, though it will not interfere to put a claimant in possession of his office, it will protect one already in possession from being disturbed unlawfully. . . . But the actual incumbent of an office, whether *de jure* or *de facto*, if duly qualified and in office by virtue of a certificate of election issued by the proper officers, will be protected by injunction against unlawful interference with his possession thereof." (Citing cases last cited.)

Poyntz v. Shackelford.

It is also urged that the judge below was without power, after granting the order of injunction, to at once dissolve it on his own motion, and that, in substance, the entire order is to be taken as a refusal to grant the injunctive order in the first instance, and that, when so considered, there is no right of application for reinstatement. We can perceive, however, no lack of power in the chancellor to so shape his order as to give the right of appeal, or, more properly, the right to make application for a revision of the order by an appellate judge or judges. There has been, in fact, an injunction granted, and it has been dissolved, and the application to reinstate is, in express terms, authorized under our Code. It is not necessary to decide whether the right would have existed to make such application had the order granting the injunction been allowed to stand. It is not improper to note, however, that such right was, at least, a doubtful one. We take the order as we find it—as one framed in good faith, by a conscientious judge, in a doubtful state of the law, to the end that, without any uncertainty, a proceeding in the nature of an appeal might be prosecuted in a grave and important matter.

On the whole case, we are of opinion that the injunction dissolved on January 6, 1900, should be, and the same is hereby, reinstated, and an order to that effect will be filed in the Franklin Circuit Court, as prescribed by law.

JUDGE DuRELLE dissents:

The record in this case discloses two injunctions—one granted in court, but without any provision for a bond; and the other by the judge in chambers, granting the injunction, and at the same time dissolving it.

It seems fair to presume that the judgment entered in court was regarded and treated as a nullity, and coun-

sel for applicants have so treated it. In legal effect, the action of the circuit judge was a refusal of the injunction. That, except in so far as the injunction was granted for twenty days, was what the judge really did.

The first question here is whether this court, or any judge thereof, upon application made to him, will, for the purpose of taking jurisdiction, regard what was actua'ly done by the order, or what the circuit judge recited to have been done, without regard to its truth. Upon this question it would seem there could not be two plausible opinions.

This court has always regarded the substance of judgments, rather than their form, in deciding upon jurisdictional questions.

For the avowed purpose of giving to one party the right to make application to a judge of the Court of Appeals for a decision of the legal question, the circuit judge entered an order, and in the same breath nullified it. It is unnecessary to discuss the motive, or the propriety of the circuit judge's desire to give the right to such application to one party rather than to the other.

The question presented here is as to the power of the circuit judge, and the power to enter an order which shall be valid for the purpose of giving jurisdiction to a judge of this court, but void for all other purposes, does not, in my judgment, exist, and would be extremely pernicious if it did.

If the circuit judge may do this, for the purpose of giving jurisdiction on behalf of one party in a case like this, what reason is there that the circuit court may not do so in another?

Consider for a moment: Jurisdiction upon appeal is regulated by the amount in controversy. As to the de-

fendant, the amount in controversy, unless there be a counter-claim, is regulated by the amount of the judgment against him. Suppose that a chancellor should, for the avowed purpose of giving this court appellate jurisdiction of a case, render a judgment for $200, with a proviso that if the defendant did not, within a certain period, appeal, the judgment for all above $100 should be void.

Is it to be supposed for a moment that this court would take jurisdiction of such an appeal?

So, in this case, neither this court, nor any judge thereof, has any jurisdiction to consider or determine upon the rights of the parties, because there is no order which can be brought before a judge of this court, except an order which might have been brought here by the defendants, granting an injunction against them for twenty days. An order which annuls itself is no order at all. An order which partly annuls itself is, *pro tanto*, no order. The action of the circuit judge was beyond his power for the purpose avowed or for any purpose

But it is sought to be justified or excused upon the ground that there is an apparent want of equity in allowing the right to apply to a judge of this court to the defendant, against whom the injunction was granted, and not to the plaintiff, to whom relief was refused.

So much has been said recently of the court's want of power to consider a question of legislative policy that this suggestion seems hardly worthy to be considered. But it might be suggested that there is a good reason for the distinction, and which, doubtless, appealed to the legislative discretion.

The General Assembly, in effect, said to the litigants in an injunction suit:

"There is an existing status in the relations between

you.   An injunction is an extraordinary remedy.   If, by means of this extraordinary remedy, a circuit judge alters the existing status, we give to the litigant *against* whom it is disturbed a right to apply to a judge of the higher court to restore the pre-existing status."

Not so, however, if this relief is refused by the circuit judge.   There, the circuit judge having refused to alter the status, the party seeking the relief is presumed not to be entitled to it; and as the extraordinary remedy has not been granted, to the disturbance of the existing state, there is no occasion to permit an application to a judge of the Court of Appeals.

But, whether the reason for the legislative distinction was a good or a bad one, the fact remains that, in giving this to one and denying it to the other party, the Legislature exercised an undoubted and unquestioned power belonging to it, and it is not for a circuit judge to nullify the statute by entering an order which nullifies itself.

And this court, by all proper rules of construction, is as impotent as the circuit court in controlling a question of legislative policy, or even in considering it, except in so far as it may shed light on the meaning of the Legislature.

This, in my judgment, is the basic objection to the action of the majority of the court.   In this objection Judge Guffy concurs.   I shall merely mention my other objections.

I consider the section of the statute providing for the filling of vacancies to be unconstitutional, under sections 152 and 76 of the Constitution, and have stated briefly my reasons for so thinking in my dissenting opinion in Purnell v. Mann, reported in 50 S. W., 268.

Another objection is that no reason is stated in the pe-

tition for the granting of this extraordinary remedy, and
no injury is averred to be threatened which would justi-
fy its use.

For ·these and other reasons, I dissent from the ruling
of the majority.

JUDGES BURNAM AND GUFFY CONCUR IN THIS DISSENT.