## Rouse et al. v. Johnson et al.

(Decided May 27, 1930.)

474

E. C. O'REAR, OVERTON S. HOGAN and WILLIAM MARSHALL BULLITT for appellants.

J. W. CAMMACK, Attorney General, CLIFFORD E. SMITH, Assistant Attorney General, JOHN C. DOOLAN, GEORGE R. HUNT, J. R. LAYMAN. COLEMAN TAYLOR and G. B. MARTIN for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE THOMAS— Affirming.

This action, filed in the Franklin circuit court by appellants and plaintiffs below against appellees and defendants below, challenges the validity of an act of the 1930 session of the General Assembly of this commonwealth known as House Substitute for Senate Bill No. 35, and it hereinafter will be referred to as the "New Act." It repealed and supplanted a prior existing statute relating to the same subject of road construction and which repealed and supplanted statute we shall hereafter refer to as the "Old Act." The old act designated the governmental agency provided by it for the execution of its purposes as the "State Highway Commission" which was composed of four members to be appointed by the Governor, one each from districts created by the act. The same agency created by the new act is designated therein as "The State Highway Commission of Kentucky," and consists of eight members to be appointed from the same number of districts created by it, but the power to appoint the eight commissioners provided for by that act was taken away from the Governor and lodged with an "Appointing Board" therein provided for and to consist of the Governor, Lieutenant Governor and Attorney General. After the enactment of the new act and its taking effect immediately thereafter because of an emergency clause therein, the appointing board therein provided designated the eight defendants as members of the state highway commission of Kentucky created by that act and they were confirmed by the senate as provided for therein.

After the passage of the new act, and before the Legislature adjourned, the Governor, acting upon the theory that the new act was unconstitutional and invalid, sent to the Senate for confirmation the names of the plaintiffs as members of the commission provided for in the old act; but that body declined to confirm their appointment upon the theory that the old act, under which the appointment was attempted to be made, had been repealed by the new one and that there were no longer such officers as members of the old ''State Highway Commission.'' After the adjournment of the Legislature, and acting upon the same theory, the Governor appointed plaintiffs as interim members of the commission created by the old act and they then filed this action against defendants, contesting their right to function under the new act upon the ground that it was unconstitutional and invalid and for which reason it did not repeal the old act, and that plaintiffs were entitled to discharge the duties sought to be taken from them by the new act and imposed upon the members of the commission created by it. Defendants demurred to the petition but without waiving it filed their answer denying all of the grounds of attack and contending that the new act was valid and within the power and authority of the Legislature to enact. The court, however, sustained their demurrer to the petition and plaintiffs declining to plead further it was dismissed, and to reverse that judgment they prosecute this appeal.

The only grounds, as contained in the petition and argued by learned counsel for plaintiffs, to sustain the contention that the new act is unconstitutional and invalid, were and are: (1) That it is in violation of sections 27 and 28 of our Constitution in that it attempts to confer executive power upon the Lieutenant Governor, which office, as is also contended, is primarily and essentially a legislative one and that the incumbent in the office may not be vested by the Legislature with the executive authority to appoint to office, and that the attempt by the Legislature in the new act to do so, or to annex such a duty to his office, constitutes an unlawful effort to confer upon him executive power when, as contended, he is only a legislative officer and which is in violation of section 28 of the Constitution, saying ''No person, or collection of persons, being of one of those departments (the division of governmental powers of the commonwealth made by

section 27 of the Constitution, and which are legislative, executive and judicial), shall exercise any power properly belonging to either of the others, except in the instances hereinafter expressly directed or permitted;" and (2) that the new act offends section 152 of the Constitution in that it authorizes the filling of *vacancies* in the commission created by it by the appointing board instead of by the Governor who, as contended, is given the sole authority by section 152 of the Constitution to fill such vacancies.

It is also contended, as was averred in the petition, that another act passed by the 1930 session of the Legislature, known as Senate Bill No. 188, is invalid and unconstitutional for certain argued reasons; but because of the conclusions we have reached we do not regard it necessary to determine that question, which only affects the title of plaintiffs to the offices as members of the commission created by the old act, because their appointments were not confirmed by the Senate as prescribed in Senate Bill No. 188, but were rejected by that body and they were rendered by that act ineligible for recess appointment by the Governor to the same offices after the adjournment of the Legislature. But, for the reason stated, that question will not be determined in this opinion but will be left open.

The contention of learned counsel for plaintiffs that an officer, whose duties appertain exclusively to one of the three departments of government created by the Constitution, may not exercise power and perform funtions and duties appertaining exclusively to another of such departments, is not and cannot be questioned, since this court in almost numberless cases as well as all other courts wherein the same constitutional provision exists, have so held and determined. One of the latest from this court so doing is that of Sibert v. Garrett, 197 Ky. 17, 246 S. W. 455, wherein other prior cases, both domestic and foreign, are cited and referred to.

At the outset, and before adverting to the relevant constitutional provisions, it might be well to note that state Constitutions do not *delegate* power to the Legislature of the state, which body has all power unless prohibited or limited by the Constitution. In other words, state Constitutions unlike the federal one only prescribe inhibitions and limitations upon legislative power and that unless the legislative body is so prescribed and limited by the Constitution its authority is unlimited and

it may enact upon any subject in the mode and manner it sees proper. Cooley's Constitutional Limitations (8th Ed.) vol. 1, p. 96.

With equal propriety and relevancy it should also be remembered that the express mentioning, and conferring by, a constitutional provision of named powers and duties without a further provision confining them to those so expressly named does not create an inhibition upon the Legislature from prescribing and annexing other duties appertaining to the same department of government, including powers and duties of a constitutional officer if that be the subject-matter upon which the Constitution has spoken without limiting the Legislature to what it (the Constitution) has prescribed. As a concrete example of that proposition: the Constitution in conferring upon an official created by it certain duties, or certain powers without any inhibition against the Legislature conferring others of a similar nature, will not prevent the latter from conferring upon that office other similar duties and powers appertaining to the particular department to which the office belongs, and which principle grows out of the one above mentioned; i. e., that a state Constitution is not a grant of powers to the Legislature, but only a limitation upon them. Having said this much we will now turn our attention to the constitutional provisions bearing upon the legal questions at issue.

It will be observed that the inhibition in section 28 of our Constitution against a person or persons belonging to one of the departments of the state exercising power and authority belonging to either of the others, has an exception saying: ''Except in the instances hereinafter expressly directed or permitted''—and it is to be ascertained, as the opinion proceeds, whether or not there is such an exception in other provisions of the Constitution concerning the office of Lieutenant Governor, and also to determine to which department the officer properly belongs.

The published Constitution, as it now appears in Carroll's 1930 Edition of the Kentucky Statutes, and as it has appeared since it was adopted, is divided under different headings, among which are the ''Legislative Department,'' the ''Judicial Department,'' and the ''Executive Department.'' We have not examined the finished and enrolled copy of our present Constitution and do not know whether such divisions appear in it or not, but we have examined the certified and published

proceedings of that convention, including the debates of its members, as well as its organization, and from which it is disclosed that there were divers and sundry committees appointed by it as a necessary agency to its proper and appropriate functioning, three of which were committees appertaining to the three above-mentioned headings found in our Constitution as now published in the Statutes, and when the convention came to consider the office of Lieutenant Governor the subject was referred to the *executive* committee for it to draft and recommend the provisions for adoption relating to that office. When the subject was brought before the convention many of its members participated in the discussions, and from which it emphatically appears that both they and the convention regarded that office as being an *executive* one, and that the duties imposed upon its incumbent by the Constitution, were, to say the least of it, largely executive ones. But the same committee prepared and presented to the convention section 83 of the Constitution, saying: ''He shall, by virtue of his office, be president of the senate, have a right, when in committee of the whole, to debate and vote on all subjects, and when the senate is equally divided, to give the casting vote.'' The next following section (84) prescribes the *executive,* and what we conclude primary duties of the Lieutenant Governor. Both of those sections immediately follow others prescribing certain duties of the Governor of the commonwealth, and for that reason, and the further one, that the *executive* committee of the convention prepared and presented all of the sections appertaining to that department of the state, the publishers of the Constitution, no doubt, and we think properly, concluded that the matters contained in all of the sections under that heading, at least primarily belonged under it, and that the offices created by them, including that of Lieutenant Governor, were primarily executive offices.

Strengthening that conclusion are the provisions of sections 29 and 35 of the same instrument. The first one of them vests all legislative power in a House of Representatives and a Senate and the other one says: ''The number of representatives shall be one hundred, and the number of senators thirty-eight.'' There is nothing in either of them expressly or impliedly creating an exception to the mandatory provisions of both of them. In other words, they contain no such language as ''except as

herein otherwise provided,'' and the conclusion is inevitable that no one is exclusively or even primarily a member of the General Assembly of the commonwealth, unless he be one of the 100 members of the house, or one of the 38 members of the Senate. Therefore, under the exception supra contained in section 28 of the Constitution, the convention provided in section 83 of the same instrument that the Lieutenant Governor, though an executive officer because of the matters hereinbefore pointed out, should ''by virtue of his office'' be president of the Senate, and gave to him therein mere presiding authority with the coupled right to break a deadlock in case of a tie, and which was essentially and imperatively requisite in order to enable the Senate to function upon the development of such a contingency; for, unless someone other than a member of the Senate should have the right to break the deadlock and cast the deciding vote the wheels of legislation, so far as that branch of the General Assembly was concerned, would be locked, and to take care of that possible situation the constitutional convention vested the power in the Lieutenant Governor *by virtue of his office* to unlock the deadlock.

As testing the soundness of counsel's argument that the office of Lieutenant Governor is a legislative one, let us suppose that the constitutional convention, instead of creating that office with its prescribed duties, had created another one and designated it ''President of the Senate'' and had defined his duties to be the same as those conferred upon the Lieutnant Governor so far as his connection with the Legislature is concerned, but had also added that ''by virtue of this office'' he should discharge the duties of Governor when the latter died, or was otherwise incapable, could it then logically be said that the supposed office of ''President of the Senate'' was exclusively or primarily an executive one? Consistency would require that an affirmative answer be given by plaintiffs' counsel.

Another supposition will likewise serve, as we think, to test the soundness of the argument that the office of Lieutenant Governor is not an executive but a legislative one under the terms of our Constitution, and it is: Suppose our Constitution had assigned to the office of Lieutenant Governor the precise executive duties that are now contained in it and had been entirely silent with reference to his duties connected with the legislative department,.as is now contained therein; what then would

be the proper classification of the office under the three departments into which the government of the state is divided? He would not, in that event, be an executive officer *if* the argument of counsel for appellant is correct, since the only *executive* duties imposed upon him are contingent and conditional and which, as contended by counsel, removes him from the executive classification. He would not, in the supposed event, have any connection whatever with the legislative department and could not be classified as such an officer; nor could he, for the same reason, be classified as a judicial officer, and we would have the anomalous situation of the constitutional convention dividing the powers of government into *only* three departments and providing for a state officer with the same qualifications possessed by the Governor, to be elected at the same time as the Governor and to be installed in and go out of office at the same time, but without possessing any of the duties properly assignable to either of the only three departments of government provided by the Constitution. Surely it cannot be contended that such a result would follow the supposed event, but which, nevertheless, would be true if the argument of counsel is sound, i. e., that because the executory duties put upon the office of Lieutenant Governor by the constitution are *contingent* and *conditional* it has the effect to displace him as an executive officer.

But that argument is wrecked by its own petard, when it is remembered that the only active and effective participating *legislative* duty now imposed by the Constitution upon the incumbent of the office of Lieutenant Governor is also a *contingent* and *conditional* one, since he may not vote upon the passage of any act except upon the contingency of a tie vote in a quorum of the senate. It might be that no such tie would ever occur, and the Lieutenant Governor throughout his term would never be called upon to effectively participate in legislation, just as it is argued that he might never be called upon to act as Governor because the conditions upon which he should do so might not occur throughout his term. We, therefore, see that if the argument of counsel is sound, then we have a situation exactly the same as that contained in the last supposed case supra, i. e., a state officer who is elected by the people, but who is incapable of being classified, either as a judicial, legislative, or executive officer, and which to our minds would be an absurdity and illus-

trates the unconvincing quality of the argument advanced.

Let us observe for a moment the exact application of the phrase "by virtue of his office." It is one extensively and immemorially applied to an office or officer when the Legislature or a constitutional convention sees proper to annex to the duties of an independent officer, or to confer additional powers upon him, and it is accomplished by saying that "by virtue" of being such an officer the powers being dealt with, or the performance of the duties under consideration, shall be conferred upon him, or annexed to the duties of his office. In other words, it presupposes the prior creation and existence of such an office or officer and the annexed duties are attached thereto by virtue of the already existing and prior office or officer.

That the Legislature may annex additional duties to a constitutional office, or confer powers upon a constitutional officer other than those expressly prescribed by the Constitution unless inhibited from so doing by that instrument, is everywhere recognized and practiced in this and other jurisdictions, illustrations of which in this state are to be found from time to time since the creation of the commonwealth. Some examples of which are: The state board of election commissioners, consisting of the Governor, Attorney General, Auditor, Treasurer, and Secretary of State as it was prior to the enactment of our present election law creating our present state board of election commissioners; the old state board of valuation and assessment, consisting of the State Auditor, Treasurer, and Secretary of State; the present commissioners of the sinking fund, consisting of the Governor, Secretary of State, Auditor, Treasurer and Attorney General; the present state printing commission, consisting of the Governor, Auditor, Secretary of State, Treasurer, and Attorney General; the state geological survey, consisting of the Governor, as a member of the advisory board; the state text book commission, two ex officio members of which are the Governor and the Superintendent of Public Instruction; the state board of education, heretofore composed of the Governor, Attorney General, Secretary of State, and State Superintendent of Public Instruction. An extended list of boards and commissions wherein the Governor and other executive officers are expressly made ex officio members, and in some of which they are given full power with the other

482

members of the commissions or boards could be given. It has never been recognized that such additionally imposed duties by the Legislature to those expressly conferred by the Constitution were illegal, when not forbidden by that instrument.

If it be legal and proper for the Legislature to annex such nonconferred duties and powers by the Constitution to an officer created by it as has been done with reference to the Governor, Attorney General, Auditor, Secretary of State, Treasurer, and Superintendent of Public Instruction in the instances and cases to which we have alluded, then why, may we inquire, would it not also have the power to confer such additional duties, appertaining to the department to which the officer belongs, upon the Lieutenant Governor the same as upon the other state officers mentioned? Indeed, we do not understand learned counsel to contend otherwise, but they appear to plant their whole case upon the contention that the Lieutenant Governor is what they denominate ''primarily a legislative officer,'' and that his office is essentially a legislative one; but which our above analysis of the constitutional provisions bearing upon the subject does not logically sustain.

Moreover, the statute involved in the case of Craig v. O'Rear, 199 Ky. 553, 251 S. W. 828, upheld the right of the Legislature under our Constitution to annex to, or confer upon, the incumbent of the office of Lieutenant Governor executive power and duties not mentioned in the Constitution and which was also in recognition of its right and authority to annex additional powers and duties upon the other state executives hereinbefore referred to. A great majority, if not all, of the 48 states of the Union have similar constitutional provisions, relating to the division of the departments of government, to our sections 27 and 28, and other sections making similar provisions concerning the office of Lieutenant Governor, and we have found no case, nor have we been cited to any, wherein any court held that the office of Lieutenant Governor, under such substantially similar provisions should be classified as primarily belonging to the *legislative* department of the state. On the contrary, the highest courts in a number of states having such constitutional provisions, have either expressly, or by unerring and most convincing implication, classified the office of Lieutenant Governor as an *executive* office, as will be seen by reference to the cases of Bridges v. Shallcross,

6 W. Va. 562; State v. Bellamy, 60 Okl. 62, 158 P. 897; Bynum v. Strain, 95 Okl. 45, 218 P. 883; State of Ohio v. Kennon, 7 Ohio St. 546, and Nevada by the statute involved in the case of Southern Pac. Co. v. Bartine (C. C.) 170 F. 725. The statute involved in the last-cited case was one very similar in kind and purpose to the challenged new act in this case. The Lieutenant Governor was made therein a member of an appointing board. He, with other members of the board, exercised his appointive authority and it was contested upon the same grounds relied on in this case. It is conceded that the relevant constitutional provisions in Nevada were the same at the time of the enactmnt of the statute there involved, as those in our Constitution, and the court held that none of them was violated by the act under consideration for any of the reasons there urged, which were the same, we repeat, as are now urged by plaintiffs to accomplish the same purpose in this case.

In addition to the foregoing cases, attention might be called to the text in 36 Cyc. 855, saying: "The lieutenant governor is an executive officer provided for by the constitutions, and his principal duties are to act as president of the senate, and in case of the death, resignation, absence, disability, etc., of the governor to succeed to the office or duties of the latter." The cases cited in the notes to that text at least inferentially sustain its statement that the office of Lieutenant Governor is an *executive* rather than a *legislative* one, though the incumbent is made "by virtue of his office" president of the Senate, one of the houses of the General Assembly. We conclude, therefore, that the office of Lieutenant Governor in this commonwealth is chiefly and primarily an executive and not a legislative one.

But, let us concede for the purposes of this opinion and for the sake of the argument, the most that can be possibly contended for by learned counsel for plaintiffs, and which is, that the office of Lieutenant Governor under our Constitution is neither an exclusive executive, nor an exclusive legislative one, but it is a mixed one, and its incumbent may function as both a legislative and executive officer. In that case, under the principles hereinbefore discussed, it would be competent for the Legislature to annex to or confer upon the office *executive* duties not forbidden by the Constitution which he might perform and exercise as such executive officer, and could likewise confer upon him as such legislative officer duties apper-

taining to legislation and not prohibited by the Constitution; and the latter of which the legislature has done since the creation of the office of Lieutenant Governor in this commonwealth. It was accomplished through the adoption of rules vesting him as its presiding officer with the power to appoint committees of the senate which are necessary functonal agencies of that body and wield an acknowledged influence on legislation. The Legislature has also, as we have seen, at least in one instance in this state, conferred executive power upon the Lieutenant Governor by the statute involved in the Craig case, supra. So that, if we should adopt the most favorable view for plaintiffs, the Legislature under the provisions of section 28 of our Constitution had the constitutional right to confer upon him the power and authority challenged in this case.

By a technical and ingenious process of reasoning syllogistically constructed, as learned counsel for plaintiffs to some extent indulge in some of their argument, might remotely support a different conclusion than the one which we have herein reached concerning the classification of the office of Lieutenant Governor and the duties and powers of its incumbent, and the same might be said with reference to the conclusions hereinafter expressed in the disposition of ground (2) supra, urged in support of the invalidity of the new act.

But it should be remembered that Constitutions, and Statutes as well, should be given a practical interpretation to the end that the plainly manifested purpose of those who created them might be carried out; and to accomplish it the various considerations hereinbefore alluded to are appropriate matters for consideration. It certainly was not the intention of the makers of the Constitution to isolate the office of Lieutenant Governor and to forbid the Legislature from clothing him and his office with any additional and kindred rights, powers, and duties, but to leave him forever in his isolated position and wearing only the meager official robes put upon him by the Constitution, and especially so in the absence of an express provision in that instrument so inhibiting, and when no such inhibition adheres to any other constitutional officer, as we have hereinbefore pointed out. As hereinbefore noticed, the Lieutenant Governor cannot be classified as a member of the General Assembly, for he would then make the 139th one, when the Constitution limits the membership of the two houses to 138. The

only legislative function that he performs is that of an umpire in preventing a deadlock in case of a tie, and, as stated, the most that may be said in support of the contentions of plaintiffs' counsel is, that his constitutional duties partake of, and belong to, both the legislative and executive departments of the state government, in which event, as we have also hereinbefore pointed out, the Legislature had the right to add to his executive functions and which appertain to that side of his dual character in the manner and to the extent it did in the attacked statute. We therefore conclude that ground (1) is without merit.

The disposition of ground (2) in support of the attack made on the new act, could be entirely dispensed with, since it relates exclusively to the filling of vacancies that might occur in the board created by the new act, and which question is not now before us. But, inasmuch as a vacancy might happen at any time, and inasmuch as it might be contended that if that portion of the new act should be held invalid it would operate to annul the new act entirely, we have concluded to dispose of the contention involved in this ground. Section 76 of the Constitution confers upon the Governor the power, "except as otherwise provided in this Constitution," to fill vacancies in office, but that section should be read in connection with section 93 of the same instrument, which says in part: "Inferior state officers, not specifically provided for in this Constitution, may be appointed or elected, in such a manner as may be prescribed by law," etc. Evidently that excerpt falls within the inserted exception contained in section 76, and when so considered and the two sections read together it would confine the vacancies mentioned in section 76 to such officers as are created by the Constitution, and not to the filling of vacancies in those created by the Legislature under the provisions of the inserted excerpt from section 93.

However, reliance on the provisions of section 76 of the Constitution does not seem to be made by learned counsel for plaintiffs, but they do strenuously insist that under the provisions of section 152 of the same instrument the Governor is given exclusive power to fill vacancies in both elective and appointive offices. That section says in part: "Except as otherwise provided in this Constitution, vacancies in all elective offices shall be filled by election or appointment, as follows. . . . Vacancies in all offices for the state at large, or for districts larger

than a county, shall be filled by appointment of the governor," etc. Other of its provisions prescribe that appointments to fill vacancies in county offices or for districts and municipalities less than a county, "shall be made as may be prescribed by law." The language of the section taking the place of the periods in the above excerpt relates to the *tenure* of the appointee to fill the vacancy and it prescribes, in substance, that he shall hold the office until the next regular *election,* at which city, town, county, district, or state officers are to be *elected,* if the time intervening between the appointment and such election is as much as three months; but, if such election follows the appointment less than three months, the appointee holds until the next election at which such officers are to be elected. It will be perceived that a part of the first sentence in the section refers to "elective officers" as being the kind and character referred to therein. But it does not stop there, since provision is made later on, in prescribing the tenure of the appointee, that he shall hold his office until the vacancy may be filled by *election* at a described annual *election,* at which certain designated officers are to be *elected.* If the section was not confined to elective officers, then why measure the tenure of the appointee by the time between the appointment and an *election* at which the office could be filled by *election* at a regular annual one at which any of the inserted offices are to be filled by *election?* The entire language of the section clearly indicates that no other sort of vacancies were contemplated in it except those occurring in *elective* offices and we are unable to construe the language so as to arrive at any other conclusion.

It was so legislatively construed by the enactment in 1893 of section 3758 of our present Kentucky Statutes, wherein it is provided, inter alia, that the Governor may fill vacancies in office, whether for territories larger than the county or not, if, and only when, "there is no provision of law for filling same." There could be no other statutory provision of law for the filling of such vacancies by another than the Governor if the construction contended for should be put upon section 152 of our Constitution. However, this court has expressly held in the case of Shelley v. McCollough, 97 Ky. 164, 30 S. W. 193, 17 Ky. Law Rep. 53, that the vacancies referred to in section 152 were those of *elective* officers and that the section did not refer to or embrace *appointive* officers such

as the Legislature might create under the provisions of section 93 of the same instrument. But it is said that the part of that opinion so holding was and is dictum; but, whether so or not, we will not stop to consider for its reasoning is sound and to our minds convincing. It was followed in the case of Poyntz v. Shackelford, 107 Ky. 546, 54 S. W. 855, 21 Ky. Law Rep. 1323. But it is said that the later case of Pratt v. Breckinridge, 112 Ky. 1, 65 S. W. 136, 166 S. W. 405, 23 Ky. Law Rep. 1356, 1858, overruled the Poyntz case, which seems to be true, but it was not necessary for the purposes of that opinion to overrule the Poyntz case *on that subject*, since when the court held in the Pratt opinion that the Legislature could not *itself* exercise the executive function of electing or appointing to office for *any* term, the entire question involved in that case was disposed of and there was no necessity for any expression of an opinion upon the question of filling *vacancies* as are contemplated by section 152 or elsewhere. Other cases from this court which by analogy and incidentally support the conclusion that section 152 of the Constitution refers only to *elective* officers, are, Jones v. Sizemore, 117 Ky. 810, 79 S. W. 229, 25 Ky. Law Rep. 1957; Yates, County Clerk v. McDonald, 123 Ky. 596, 96 S. W. 865, 29 Ky. Law Rep. 1056; McCreary, Governor, v. Williams, 153 Ky. 49, 154 S. W. 417; and Scott v. Singleton, 171 Ky. 117, 188 S. W. 302, 303. In the last case the opinion said: "This section (152) of the Constitution is mandatory, and, except as otherwise provided in the Constitution, provides how, by whom, and for how long vacancies in *all elective* offices must be filled." We, therefore, conclude that section 152 embraces only vacancies in *elective* offices whether constitutionally or statutorily created, and that it has no application to the filling of vacancies in *appointive* offices.

Upon the whole case, and without further elaboration, it is our conclusion that the judgment appealed from was and is proper, and it is affirmed. The whole court sitting, Judge WILLIS dissenting.

## DISSENTING OPINION BY JUDGE WILLIS.

"The accumulation of all powers, legislative, executive and judiciary, in the same hands, whether of one, a few or many, and whether hereditary, self-appointed or elected, may justly be pronounced the very definition of

488

tyranny." The Federalist, No. 47. Thomas Jefferson, desiring to frustrate forever the tendency toward tyranny and to forestall the encroaching nature of power, formulated the constitutional limitation that each of the three distinct powers of government should be confided to a separate body of magistracy, and each forbidden to invade the provinces of the others. The provision precisely as framed by Jefferson was adopted by the fathers and became a dominant feature of the first and third Constitutions of this commonwealth. Purnell v. Mann, 105 Ky. 87, 48 S. W. 407, 49 S. W. 346, 20 Ky. Law Rep. 1146, 1396, 21 Ky. Law Rep. 1129, 50 S. W. 264. The same limitation, with one significant change, was incorporated in the second, and is a pre-eminent part of our present Constitution. Sections 27-28. That one change was a substitution in section 27 of the word *"confined"* for "confided," thus adding emphasis to the restriction contained in the original declaration. It is settled in this state, and accepted by the majority opinion in this case, that the appointment to a state office is an executive function which the Legislature may not itself perform. Const., section 27; Pratt v. Breckinridge, 112 Ky. 1, 65 S. W. 136, 66 S. W. 405, 23 Ky. Law Rep. 1356, 1858; Sibert v. Garrett, 197 Ky. 17, 246 S. W. 455. Since the General Assembly does not have the power of appointment, unless expressly granted or implied in the proper exercise of some undoubted legislative power (Craig v. O'Rear, 199 Ky. 553, 251 S. W. 828), the Legislature can not engraft executive duties upon a legislative office, because that would be to usurp by indirection the power of appointment denied to it by the Constitution. Springer v. Philippine Islands, 277 U. S. 200, 48 S. Ct. 480, 72 L. Ed. 849. The court in this case cuts through all the difficulties presented by that undoubted principle by concluding that the Lieutenant Governor is primarily an executive officer to whom legislative functions are a mere incident, and that executive duties may be added by statute to his constitutional functions. The official character of an officer is to be determined by the nature of the duties devolved upon him. 46 C. J., sec. 4, page 926; Pratt v. Breckinridge, 112 Ky. 1, 65 S. W. 136, 66 S. W. 405, 23 Ky. Law Rep. 1356, 1858; State v. Kennon, 7 Ohio St. 547; City of Louisville v. Wilson, 99 Ky. 604, 36 S. W. 944, 18 Ky. Law Rep. 427. Legislative officers are those whose duties relate mainly to the enactment of laws. Bouv. Law Dict. (Rawle's 3d Rev.) vol. 3, page

2402. "The legislative power we understand to be the authority, under the Constitution, to make laws, and to alter and repeal them." Cooley's Constitutional Limitations (6th Ed.) p. 108. Chief Justice Marshall, with that felicity which makes famous so many of his utterances, put the principle in these words: The difference between the departments undoubtedly is, that the legislature makes, the executive executes, and the judiciary construes the law." Wayman v. Southard, 10 Wheat. 46, 6 L. Ed. 253. It is clear, therefore, that whether the Lieutenant Governor shall be deemed a legislative or executive officer depends upon the duties that are devolved upon him by the Constitution. The portion of the functions of government which he must exercise fixes . his character as a public officer. The provisions of the Constitution respecting the Lieutenant Governor must be examined to ascertain his *present*, as well as his potential, duties. Section 82 provides the time and manner of his election, his qualifications, and his ineligibility for the succeeding term. Section 83 reads: "He shall, by virtue of his office, be president of the senate, have a right, when in committee of the whole, to debate and vote on all subjects, and when the senate is equally divided, to give the casting vote." Section 84 provides, in certain contingencies, for his succession to the power and authority of the Governor, to be exercised until the Governor resumes his functions, or another Governor is elected. That same section prescribes also the contingency in which the Lieutenant Governor may perform certain judicial functions. Section 85 relates to a president pro tempore of the Senate, and for his succession, in certain exigencies, to the governorship with like authority as the Lieutenant Governor when acting as Governor. Section 86 reads:

> "The lieutenant governor, or president pro tempore of the senate, while he acts as president of the senate, shall receive for his services the same compensation which shall, for the same period, be allowed to the speaker of the house of representatives, and during the time he administers the government as governor, he shall receive the same compensation which the governor would have received had he been employed in the duties of his office."

Section 87 concerns the succession to the gubernatorial duties in the event neither the Governor nor the

Lieutenant Governor is available, and in still other con-
tingencies. Section 90 governs contested elections of the
Governor and Lieutenant Governor, section 95 provides
when the latter shall be elected, and section 96 relates to
the method of compensation for his official services. No
other provision of the Constitution directly affects the
matter. The court concludes from a consideration of
these sections of the Constitution that the Lieutenant
Governor belongs to the executive department and hence
the "appointive board" is an executive agency made up
of those belonging to the executive department of the
government. I think that conclusion is wrong, that the
grounds assigned in support of it are unsubstantial and
unsound, and that the authorities adduced are inapt and
unconvincing. The Lieutenant Governor confessedly has
present legislative functions and is made by the Consti-
tution a part of the law-making department. He has no
present executive duties. In certain contingencies he
leaves the legislative and enters the executive depart-
ment, but his normal functions are purely legislative.
Indeed, the act before us contemplates the Lieutenant
Governor solely in his legislative character. None of
his executive duties can arise while the Governor is per-
forming the duties of his office. The present act asso-
ciates the Lieutenant Governor with the Governor and
the Attorney General, thus confirming the conclusion that
it contemplated him only in his capacity as a legislative
officer. The Lieutenant Governor does not at the same
time have both legislative and executive duties. When
he takes on one he puts off the other. At the present
time and at the time we are considering when the
appointments were made the Lieutenant Governor was a
legislative officer in the active discharge of his legisla-
tive duties. I believe his character as an officer takes
color from the active duties imposed upon him and that
until the contingency arises that clothes him with exe-
cutive duties, he is nothing but a legislative officer. He
may be of one character at one time and another later,
but he cannot be both at the same time, and there is
no penumbra when he is neither unless it be when he is
exercising judicial functions at an impeachment trial.
But that also partakes of the character of extraordinary
legislative duties imposed by the Constitution. When
he assumes executive office he is absolved from legislative
duties, when he is excused from executive duties he
resumes his legislative functions, and while charged with

legislative obligations he has no executive responsibilities whatever. The character of his office is not to be determined by what he *may* be called upon to do, but by what he *must* do as a part of the regular duties of his office. All Lieutenant Governors must perform legislative functions. None of them is required to perform executive duties, except in the contingencies provided by the Constitution; and if such a contingency should arise, the Lieutenant Governor would not perform on the appointing board as a legislative officer, but would succeed to that duty in his character as acting Governor. That the Lieutenant Governor does not at the same time have both executive and legislative duties is a distinction observed in the Constitution itself. His compensation varies with the changes in his duties. Section 86, Const. When he is serving in a legislative capacity he draws the same salary as the speaker of the House, and when he serves in an executive capacity he draws the same salary as the Governor. This demonstrates that there is no confusion or mixing of his duties, and when he performed the act in question he was drawing the salary of a legislative officer and performing functions pertaining thereto. He was utterly without executive authority or obligation. The mere mechanics of mentioning him in the Constitution with the executive department sheds no light. Obviously that was done because it dealt with the succession to the governorship in case of a vacancy in that office. The Constitution makers were confronted with the necessity of dealing with the Lieutenant Governor as a potential successor to the Governor and also as an active legislative agent. It was necessary to refer to him in one or the other parts of the Constitution. It was thought not inappropriate to provide for the succession to the governorship immediately after creating the office of Governor. This is made more manifest by the section under the executive department providing for the succession of the president pro tempore of the Senate in the event the Lieutenant Governor and Governor both were out of office. The president pro tempore must be one of the senators and no one contends that he is an executive officer. Yet his office is created in the same subdivision of the Constitution that refers to the Lieutenant Governor, and he is in line of succession to the duties of the Chief Executive to the same extent and with precisely the same powers. It is not uncommon in the Constitution for those of one

department, as determined by their duties, to be mentioned in another department, with which they, in some capacity or contingency, may have connection. We do not pause to point out these instances, but they are numerous and may be found readily by reference to the Constitution. Indeed, there is no consistent mechanical theory maintained in the structure of that instrument. Each section is independent, mandatory, and complete and all must be read and construed together to give effect to each word, sentence, clause, and paragraph. Furthermore, the separation of powers broadly delimited by sections 27 and 28 of the Constitution is a basic and vital principle and not merely a matter of governmental mechanism. It is not a matter of terminology. Names are nothing; titles are without significance in this connection. The constitutional limitation is not concerned with terminology or the names or titles that may be annexed to offices. It consists of a comprehensive, vital principle that forbids any person or persons being of one of the grand departments of government from exercising any *power properly belonging* to either of the others, except in the instances expressly directed or permitted. The Lieutenant Governor is certainly a person of the Legislative department. He presides over one of its bodies and participates in legislation. He may debate, vote, and sign enactments. He has all the rights of a senator and one more, the right to preside and cast a deciding vote in case of a tie. His compensation is based upon his legislative services. He has no executive or other duties to perform. His office is with the Senate. His work is done in that chamber. And the highest judicial authority in this country has held that the presiding officers of legislative bodies are of the legislative branch of government and incapable of exercising executive functions attempted to be vested in them. Springer v. Phillippine Islands, 277 U. S. 198, 48 S. Ct. 480, 72 L. Ed. 849. The argument and the authority of that case are undeniable, and can be avoided only by a relaxation of the rule, inherent in the American constitutional system, and express in our Constitution, which forbids the legislative agents from exercising executive functions, except in instances particularly permitted and this is not such an instance. The argument that makes the Lieutenant Governor an executive officer because he succeeds, in certain contingencies, to an executive office would make

him also a judicial officer because in certain cases he is vested with some judicial powers. Constitution, sec. 84. But it is said that section 93 of the Constitution authorizes the Legislature, in so far as inferior state officers are concerned, to prescribe by law whether they shall be appointed or elected, and the manner thereof. That is true, but it affords no authority to the Legislature to depart from the limitations of sections 27 and 28 of the Constitution. Section 91 of the Constitution, referring to the Attorney General and other state officers created by the Constitution, provides that "the duties of all these officers shall be such as may be prescribed by law;" and section 93 provides that "the duties and responsibilities of these officers shall be prescribed by law." Yet nobody would have the hardihood to contend that authority to prescribe the duties of the named officers permitted the Legislature to impose upon any of them duties of a legislative or judicial character. It means and can only mean that the General Assembly under the Constitution is authorized to define the duties of the respective officers, but only of a character constitutionally consistent with the branch of the government to which the officer belongs. The provision that inferior state officers may be appointed or elected in such manner as may be prescribed by law simply means that the Legislature may provide for such officers to be elected by the people, or to be appointed, but certainly it is no express or implied permission to bestow the appointment of officers elsewhere than upon executive authority. If the principle of the majority opinion be carried to its logical conclusion, the case of Sibert v. Garrett, supra, would be destroyed. That case dealt with officers created by the Legislature and it was provided how the offices should be filled. In fact the statute itself named the officers and provided for the selection of their successors. Cf. 12 C. J. p. 837, sec. 319. To authorize the Legislature to provide by law for certain objects does not authorize it to depart from sections 27 and 28 of the Constitution. If they depart from those sections, the act is not law, since the Legislature can enact only such laws as conform to, and are consistent with, the Constitution.

The majority opinion refers to certain authorities to sustain the proposition that a law conferring new duties on existing officers is not forbidden. That principle is not questioned, but it is subject to the limitation that the

added functions must be of like character, consistent with existing duties, and conformable to the Constitution respecting confinement of powers to the department where they belong. Coleman v. Hurst, 226 Ky. 501, 11 S. W. (2d) 133. A number of boards created by the General Assembly are mentioned in the opinion. It is significant to observe that of the numerous bodies of that character created from time to time, not a single one of them contained a legislative officer or agent. Every one of them was composed of the heads of executive or administrative departments without any connection with the legislative branch of the government. For the first time the Lieutenant Governor is now placed upon a board to perform executive duties. The court refers to 36 Cyc. p. 855 as authority for holding that the Lieutenant Governor is an executive officer. It declares that the "lieutenant-governor is an executive officer provided for by the Constitutions, and *his principal duties* are to act as president of the senate." The reference to his duties being in the legislative department shows that the characterization of his office was not correct but self-contradictory. The cases cited to support the text are State v. County of Duval, 23 Fla. 483, 3 So. 193; People v. Cornforth, 34 Colo. 107, 81 P. 871; State v. Sadler, 23 Nev. 356, 47 P. 450, and Crosman v. Nightingill, 1 Nev. 323. The cases do not support the text. Not a single one of those cases had occasion to determine the character of the office, or to deal with the duties of the officer. The subject is not discussed in any particular in any of those four cases, and none of them contains a hint of the proposition to which they are cited.

The majority opinion mentions some decisions as "inferentially" supporting it. An examination of those cases will demonstrate the fallacy of the assumption. In State v. Kennon, 7 Ohio St. 546, it was decided that an act of the Assembly attempting to authorize three private individuals to name the "commissioners of the state house," with defined duties, was unconstitutional because the Legislature was forbidden to exercise appointing power. Neither the prevailing opinion nor the concurring opinion mentions the Lieutenant Governor or refers to his functions or the character of his office. In Bridges v. Shallcross, 6 W. Va. 562, an act creating a corporate commission composed of the Governor, Auditor, Treasurer, School Superintendent, and Attorney General,

called a board of public works, and authorized to appoint a superintendent of the state penitentiary, was assailed. The attack leveled against the act was grounded upon two propositions: (1) That the act amounted to a legislative appointment to office; and (2) that it invested the incumbents of the offices named with an additional office when they were forbidden by the Constitution of the state to hold two offices. Both propositions were denied by the court. The case of State v. Bellamy, 60 Okl. 62, 158 P. 897, simply held, as announced in a syllabus prepared by the court, that "a public officer is bound to perform the duties attached to his office for the compensation fixed by law." Neither of these three cases inferentially or otherwise described the character of the office of the presiding officer of a legislative body or had any such question under consideration. In Bynum v. Strain, 95 Okl. 45, 218 P. 883, it was decided that the Governor of the state, who had statutory power to appoint and for cause to remove a banking commissioner, was not thereby vested with *judicial powers* in violation to the Constitution. The sole reference to the Lieutenant Governor was an incidental quotation from a section of the Oklahoma Constitution which provided that the Governor, Lieutenant Governor, Secretary of State, and nine other state officials were executive officers with specified duties. Doubtless any court would hold that a Constitution which designated a Lieutenant Governor as an executive officer would be given effect, but no question concerning the Lieutenant Governor was before the court. Cf. People v. McCullough, 254 Ill. 9, 98 N. E. 156, Ann. Cas. 1913B, 995, and In re Railroad Commissioners 15 Neb. 679, 50 N. W. 276. In Southern Pacific Co. v. Bartine (C. C.) 170 F. 725, 748, an act of the Legislature of Nevada which created an appointing board composed of the Governor, Lieutenant Governor and Attorney General was attacked on the ground that the Legislature itself appointed to office when it named the offices whose incumbents should constitute the board. The court held:

"This is not an appointment of those officers to a new office, but an increase in their official power and duty. Even if it be conceded that the Constitution forbids the exercise of the appointing power by the Legislature, still the act in question is not for this reason repugnant to that instrument, because, no appointing power, as contemplated by the prohibition, has been exercised by the Legislature."

496

The question as to the character of the office of Lieutenant Governor was not raised, discussed, or decided, and the decision to the effect that the act merely added new powers to existing officers is not the question here. The authoritative and direct decision of the Supreme Court of the United States that presiding officers of legislative bodies are officers of that department, and incapable of exercising executive power, stands unimpaired and unanswered. The General Assembly may create the agencies for the administration of the government, but it may not choose the agents to administer it. Equally it may not delegate to legislative agencies any distinct executive authority. So far as I can find, or as has been suggested, no court has ever held that the character of an office can be determined otherwise than by the duties delegated to it. We must go far afield to determine the official character of an officer from an uncertain duty to which he may succeed in contingencies which may never occur, and ignore the character of actual functions presently prevailing. I cannot believe that the Lieutenant Governor as such, while performing his legislative duties, and when he is under no executive obligations whatever, is anything other than a legislative officer.

It is said in the opinion, although the question is not presented, that the provision of the act in question providing for the filling of vacancies is valid and not a violation of section 76 or section 152 of the Constitution. The court discharges all that duty dictates when it disposes of the controversy presented. Propriety and caution alike preclude any prophetic solution of potential, or even probable, problems that may or may not arise. Such a declaration is without other sanction than its persuasiveness, and doubtless arguments as good can be advanced when the issue arises. But that is not the only reason for my disagreement, and, since I regard the declaration of the court in that respect as wrong, a sense of duty impels that the reasons should be stated. The provisions of the Constitution concerning the power of the Governor respecting vacancies read:

Section 76: "He (the governor) shall have the power, except as otherwise provided in this constitution, to fill vacancies by granting commissions, which shall expire when such vacancies shall have been filled according to the provisions of this constitution."

Section 152: "Vacancies in *all offices* for the state at large, or for districts larger than a county, shall be filled by appointment of the governor; *all other appointments* shall be made as may be prescribed by law."

These provisions are plain, precise, unambiguous, and all-inclusive. The rules of constitutional construction are not in dispute. "The discretion of the courts is more restricted in applying the rules of construction to a plan of government contained in a written constitution, than in the construction of statutes. And the reason is conclusive. Statutes are often hastily and unskillfully drawn, and thus need construction to make them sensible. But constitutions import the utmost discrimination in the use of language." Greencastle Tp. v. Black, 5 Ind. 566, 570. That which the words declare is the meaning of an instrument; and neither courts nor Legislatures have the right to add or to take away from that meaning. This is true of every instrument, but when we are speaking of the most solemn and deliberate of all human writings, those which ordain the fundamental law of states, the rule rises to a very high degree of significance. It must be very plain, nay, absolutely certain, that the people did not intend what the language they have employed, in its natural signification, imports, before a court will feel itself at liberty to depart from the plain reading of a constitutional provision. On this subject Chief Justice Marshall says, speaking of the Constitution of the United States: "As men, whose intentions require no concealment, generally employ the words which most directly and aptly express the ideas they intend to convey the enlightened patriots who framed our constitution, and the people who adopted it, must be understood to have employed words in their natural sense, and to have intended what they have said." Gibbons v. Ogden, 9 Wheat. 1, 188, 6 L. Ed. 23. Newell v. People, 7 N. Y. 9, 97. This court, in numerous instances not necessary to notice, have expressed the same principle.

In expounding a Constitution it is proper to take a broad view and it is presumed that every word, sentence, and phrase was deliberately chosen to express an exact meaning. The Constitution of the state was adopted by the people of the state as the fundamental law of the state. Its every mandate was intended to be paramount

authority to all persons holding official trusts, in whatever department of government, and to the sovereign people themselves. No mere unessential matters were intended to be engrafted in it; but each section and each article, as solemnly weighed and considered, and found to be essential to the form of constitutional government adopted. Whenever the language used is prohibitory, it was intended to be a positive and unequivocal negation. Whenever the language contains a grant of power, it was intended as a mandate exclusive in character. Whenever the language gives a direction as to the manner of exercising a power, it was intended that the power should be exercised in the manner directed and in no other manner. It is an instrument of words granting powers, restraining powers and reserving rights. These words are fundamental words, meaning the thing itself; they breathe no spirit except the spirit to be found in them. To say that its terms are mere weasel-words is to license a violation of the instrument every day and every hour. To preserve the instrument inviolate, we must regard its words, except when expressly permissive, as mandatory, breathing the spirit of command. Varney v. Justice, 86 Ky. 596, 6 S. W. 457, 9 Ky. Law Rep. 743; McCreary v. Speer, 156, 9 Ky. Law Rep. 743; McCreary v. Speer, 156 Ky. 783, 162 S. W. 99. The majority opinion adds to the constitutional provision the word ''elective'' and thus confines the appointive power of the Governor conferred by the Constitution to ''all elective offices'' for the state at large and for districts larger than a county. The court cites Shelly v. McCullough, 97 Ky. 164, 30 S. W. 193, 17 Ky. Law Rep. 53; Poyntz v. Shackelford, 107 Ky. 546, 54 S. W. 855, 21 Ky. Law Rep. 1223, and some other cases not in point, but in which the word elective was employed in referring to the subject. Since there is no ambiguity in the constitutional provision, there is no room for resort to rules of interpretation. Lake County v. Rollins, 130 U. S. 662, 9 S. Ct. 651, 32 L. Ed. 1060; Gibbons v. Ogden, 9 Wheat. 1, 6 L. Ed. 23; Crick v. Rash, 190 Ky. 820, 229 S. W. 63; Barker v. Crum, 177 Ky. 637, 198 S. W. 211, L. R. A. 1918F, 673. The insertion of a word is not justified by any necessity to render the rule reasonable or operative or to avoid a conflict with any other provision. It is not compelled by a course of decision, or long acceptance or acquiescence. Shelley v. McCullough, supra, involved a city office, and Poyntz v. Shackelford, supra, was expressly overruled in Pratt v. Breckinridge,

112-Ky. 1, 65 S. W. 136, 66 S. W. 405, 23 Ky. Law Rep. 1356, 1858, where section 152 of the organic law was expounded and declared to mean what it said. The first portion of section 152 providing for special elections to fill vacancies employs the words "elective officers," thus demonstrating that the distinction between "all offices" and those made elective was understood by the authors of the organic law. The fallacy in the reasoning employed in the earlier cases is exposed by the later ones and requires no repetition. Pratt v. Breckinridge, supra; Sibert v. Garrett, supra. It is suggested in the opinion of the court that section 3758 of the statutes was a legislative construction of the Constitution. That statute mentions a number of offices in which vacancies should be filled by appointment of the Governor and adds that a vacancy in any other office where there is no provision of law for filling same, shall be filled by the appointment of the Governor. In the first place, the Constitution is plain and unambiguous repelling any resort to legislative construction, and if the act was contrary to the Constitution, it was void. In the next place, the act shows that the General Assembly understood the Constitution, which vested in the Governor the power to fill "all vacancies" in offices for the state at large and for districts larger than a county, and conferred upon the Assembly the power to provide for the filling of vacancies in all other cases. It proceeded to enact a law conferring upon the Governor the power to fill vacancies in the instances not conferred upon him by the Constitution, which was for offices in districts not larger than a county. The act drew no distinction between elective and appointive offices, but expressly deferred to the constitutional mandate. I can find neither reason nor authority for inserting the word "elective" in section 152 of the Constitution, which confers upon the Governor the power to fill vacancies in "all offices for the state at large or in districts larger than a county." I think the Constitution means what it says and ought to be obeyed.

For the reasons indicated, I dissent from both propositions announced by the court.