ARMSTRONG v. TOWNSEND et al.

No. 1584.

District Court, S. D. Indiana, Indianapolis
Division.

Nov. 16, 1934.

Solon J. Carter and U. S. Lesh, both of Indianapolis, Ind., and A. K. Sills, of La Fayette, Ind., for plaintiff.

Philip Lutz, Jr., Atty. Gen., of State of Indiana, Fred A. Wiecking and Joseph W. Hutchinson, Asst. Attys. Gen., and Floyd J. Mattice, of Indianapolis, Ind., for defendants.

BALTZELL, District Judge.

The defendant M. Clifford Townsend is the duly elected, qualified, and acting Lieutenant Governor of the state of Indiana, having been so elected at the general election in November, 1932. The term for which he was elected is for a period of four years, commencing on the second Monday in January, 1933, and extending to the second Monday in January, 1937. He qualified as Lieutenant Governor by taking the prescribed oath of office and entered upon the performance of his duties as such official at the time prescribed in the Constitution (Const. Ind. art. 5, § 9). Since that time, he has served in that capacity and is so serving at this time.

The defendant Floyd E. Williamson is the duly elected, qualified, and acting auditor of state of the state of Indiana, having been so elected in the general election held in November, 1932, for a period of two years. He duly qualified as such auditor by taking the prescribed oath of office on the 1st day of December, 1932, and since that date has been acting in that capacity, performing the duties required by that office, and is so acting at this time.

The office of Lieutenant Governor is one which is created by the Constitution of the state of Indiana. The Constitution, however, neither fixes his salary nor defines his duties, except it is therein specifically provided that, by virtue of his office, he shall be President of the Senate, and, while acting as such, he shall receive the same compensation as that received by the Speaker of the House of Representatives.

The Legislature has convened only once since the election of the defendant Townsend as Lieutenant Governor, and that was the session which began on the first Thursday in January, 1933, and extended over a period of sixty days. The defendant Townsend, as Lieutenant Governor, served as President of the Senate during such session, being the Seventy-eighth Regular Session of the General Assembly of the state of Indiana, and received for such services the same compensation as that paid the Speaker of the House of Representatives for his services as such Speaker during such session.

The General Assembly, in such session, passed an act known as the "State Executive-Administrative Act," which act was approved by the Governor on February 3, 1933 (Acts Ind. 1933, c. 4). Such act provided for the establishment of several departments for the administration of the affairs of state and made the Governor a member of each department. The Lieutenant Governor was made a member of some of these departments, among which was the "Department of Commerce and Industries," with which department we are especially concerned in this case, because that is the department in which he renders the most service. The provisions of the act creating and establishing such department read as follows:

"That the department of commerce and industries shall be in charge of the board of department of commerce and industries, which board shall consist of the governor, the lieutenant-governor, and three other persons, one of whom shall be designated by the governor as the chief administrative officer thereof; and in the discretion and upon the direction of the governor such additional number of persons as he may direct from time to time, not to exceed five." Acts Ind. 1933, c. 4, § 17, p. 12.

The other departments of which the Lieutenant Governor is made a member are the departments of state, education, and public works. By authority of this act, the Governor named the defendant Townsend as the chief administrative officer of the "Depart-

ment of Commerce and Industries," the duties of which have been performed by him since the taking effect of this act.

The General Assembly, in such session, also passed an act creating the "Division of Agriculture" under the "Department of Commerce and Industries," which act was approved by the Governor on March 9, 1933, and provides, in part, that "the chief administrative officer of the 'department of commerce and industries' shall be the administrative and executive officer of the 'division of agriculture.' * * *" Acts Ind. 1933, c. 257, § 1, p. 1140. The defendant Townsend, being the chief administrative officer of the Department of Commerce and Industries, became the administrative and executive officer of the Division of Agriculture upon the taking effect of this act, and has performed the duties relating thereto since that time. This division supervises the state fair and performs the duties heretofore performed by the Indiana Board of Agriculture.

At this same session of the General Assembly an act was passed, fixing the salary of the Lieutenant Governor and making an appropriation therefor, which act was approved by the Governor on March 7, 1933, and reads as follows:

"Section 1. That from and after the first day of April, 1933, the annual salary of the lieutenant-governor, in addition to his pay as President of the Senate, shall be six thousand dollars.

"Sec. 2. To pay the annual salary of the lieutenant-governor other than his compensation while acting as President of the Senate, there is hereby appropriated the following amounts:

"For the period ending September 30, 1933, the sum of three thousand dollars.

"For the fiscal year beginning October 1, 1933, the sum of six thousand dollars.

"For the fiscal year beginning October 1, 1934, the sum of six thousand dollars.

"Said salary shall be paid in the same manner and under the same restrictions as other official salaries are paid." Acts Ind. 1933, c. 119, §§ 1, 2, p. 726.

This action is brought by the plaintiff, who is a taxpayer in the state of Indiana, but who is a resident and citizen of the state of Illinois, having his residence in the city of Lawrenceville, in the county of Lawrence, in such state. Jurisdiction is invoked upon the grounds of diversity of citizenship and that the amount in controversy exceeds $3,000 exclusive of interest and costs.

Pursuant to Equity Rule 70½ (28 USCA § 723), special findings of fact and conclusions of law have been filed in this cause.

It is the contention of the plaintiff that the three acts of the General Assembly, supra, confer upon the defendant Townsend, as Lieutenant Governor, in addition to those vested in him by the Constitution, additional duties and powers which contravene certain provisions of the Constitution of the state of Indiana. The plaintiff, by this action, seeks to enjoin the defendant Williamson, as auditor of state of the state of Indiana, from drawing any further warrants, payable, under authority of chapter 119, § 2, Acts Ind. 1933, supra, to the defendant Townsend, as Lieutenant Governor. He also seeks to enjoin the defendant Townsend from taking any steps or proceedings whatsoever to compel the defendant Williamson to draw further warrants payable to him by virtue of such act, because, as he contends, the provisions of the three acts passed by the General Assembly of 1933, supra, are invalid and void in so far as the granting to the Lieutenant Governor of additional duties or paying him any additional compensation other than those duties performed as President of the Senate and the compensation received therefor are concerned. It is his further contention that such acts are invalid and that, therefore, the defendant Townsend is entitled to no compensation for any services which he has heretofore rendered or may render in the future, pursuant thereto.

Separate and several motions to dismiss the bill have been filed by each defendant. In support of his motion, the defendant Townsend contends: First, that, in so far as he is concerned, it is an action for money had and received, and that the plaintiff has a complete and adequate remedy at law; second, that the jurisdictional amount is not involved; third, that there is a misjoinder of causes of action; that is, there being joined an action at law for money had and received, and an action in equity wherein injunctive relief is sought.

The contentions of the defendant Williamson, as auditor, in his motion to dismiss, are similar to those presented by defendant Townsend.

■ The value of the matter in controversy is the pecuniary result to either party which a decree would produce, either at present or in the future. Elliott v. Empire Natural Gas Co. (C. C. A. 8th) 4 F.(2d) 493; Smith v. Adams, 130 U. S. 167, 9 S. Ct. 566, 32 L. Ed. 895.

■ The plaintiff is a resident and citizen of the state of Illinois, but has property in Knox county, Ind., upon which he pays taxes. If, in determining the amount in controversy, the actual saving to the plaintiff in the amount of taxes which he has paid or will pay in the future because of the salary paid the Lieutenant Governor in excess of that paid him as President of the Senate is the standard, then, it cannot be contended that the necessary amount ($3,000) is in controversy. If, however, the amount in controversy is to be measured by the pecuniary loss to the defendant Townsend of the salary which he is to receive in the future during the remainder of his tenure in office, as well as the amount which he has already received, then no question is presented upon that phase of the case. The facts are that there has already been received by him a sum in excess of $3,000. There has been appropriated by the Legislature a sum sufficient to continue the payment of his salary to October 1, 1935. The plaintiff had his choice of filing an action at law to recover the amount already received by defendant Townsend, or to file an action in equity to enjoin him from receiving any additional compensation for the services which plaintiff asserts are being performed without right. He chose the latter course, and, if successful, the defendant Townsend will be deprived of compensation at the rate of $6,000 per year for a period of more than two years, which will aggregate considerably more than the jurisdictional amount. A suit at law may then be instituted to recover the amount of money already paid to him, if such recovery cannot be had in this suit. It appears clear that the amount in controversy is greatly in excess of $3,000. Washington Market Co. v. Hoffman, 101 U. S. 112, 25 L. Ed. 782. This being an action against the defendant Williamson, as auditor in his official capacity, wherein an injunction is sought to prevent the payment of the future salary of the defendant Townsend during the remainder of his term as Lieutenant Governor, it is equally clear that there is a proper joinder of parties, and that the jurisdictional amount is sufficient as to each party.

This is not an action for money had and received in so far as the defendant Townsend is concerned, but is an action to enjoin him from demanding or receiving any further compensation for his services performed pursuant to the acts of the General Assembly of 1933, supra. If, in this action, the plaintiff, should he succeed in his contention that the statutes in question are illegal and void,

is not permitted to recover the amount already received by the defendant Townsend, there remains the future payments in controversy, which greatly exceed the jurisdictional amount. This being a suit between citizens of different states, and the amount in controversy being more than $3,000 exclusive of interest and costs, this court has jurisdiction, and the motion to dismiss of each defendant should be, and is, overruled. 28 USCA § 41.

The plaintiff challenges the constitutionality or validity of the three separate and distinct acts of the General Assembly of 1933, supra. Each act challenged has to do either with the duties therein imposed upon the defendant Townsend, as Lieutenant Governor of the state of Indiana and as chief administrative officer thereunder, or with the salary therein provided as compensation for the performance of such duties.

 It is contended by the defendant Townsend that, while the plaintiff attacks the validity of each of the three acts, supra, it is clear that he is challenging only the validity of chapter 119, which fixes his salary. It is argued that this is apparent especially because the relief asked is to enjoin the payment of the salary and not the performance of the services provided in the other acts. The Constitution fixes the compensation of the Lieutenant Governor as President of the Senate, and for these services the Legislature has no authority to change such compensation, but this provision in the Constitution does not prohibit the Legislature from fixing an annual salary for him, as Lieutenant Governor, in such amount as it deems wise. It is to be presumed, however, that the Legislature will not compensate him, or fix a salary for him, unless he is required to, and does, render some service in the department of the government to which he belongs. Hence, in the instant case, it may be presumed that the salary provided in chapter 119, supra, is to compensate him for the services which he is required to render, by virtue of the duties imposed upon him under the provisions of chapters 4 and 257, supra. This being true, the court must determine the validity of the provisions of chapters 4 and 257, supra, which impose upon him certain duties in addition to those of acting as President of the Senate, in order that a conclusion may be reached as to whether or not he should be compensated as provided in chapter 119, supra. If those acts are valid, then it is reasonable to conclude that the act fixing the salary should be sustained. If, however, the court should determine that chapters 4 and 257, supra, are invalid and unconstitutional, in so far as the duties imposed upon the Lieutenant Governor are concerned, and that he cannot perform the services as provided therein, then it should necessarily follow that he should not be compensated for services which he is not permitted to render, and, consequently, chapter 119 must fail.

It is necessary, therefore, to make a careful examination of the provisions of the Constitution of the state of Indiana relating to the office of Lieutenant Governor in order that a logical conclusion may be reached. It is provided in the Constitution (article 3, § 1) that:

"The powers of the government are divided into three separate departments: the legislative, the executive, including the administrative, and the judicial; and no person charged with official duties under one of these departments shall exercise any of the functions of another, except as in this constitution expressly provided."

It is contended by the defendants that the Lieutenant Governor is a member of the executive department of the state government, and it is, therefore, proper that he be permitted to perform certain duties connected therewith, including the administrative duties assigned to him by the acts of the General Assembly, supra. The plaintiff, however, contends that the Lieutenant Governor should be classified as a member of the legislative department so long as he is Lieutenant Governor, and that he becomes a member of the executive department only in the event of the death or incapacity of the Governor to serve, in which event he becomes Governor and is, of course, then a member of the executive department. Attention is directed to the following provision of the Constitution (article 5, § 21) in support thereof:

"The lieutenant-governor shall, by virtue of his office, be president of the senate; have a right, when in committee of the whole, to join in debate, and to vote on all subjects; and whenever the senate shall be equally divided, he shall give the casting vote."

It is also provided in the Constitution (article 5, § 23) that:

"The lieutenant-governor while he shall act as president of the senate, shall receive for his services the same compensation as the speaker of the house of representatives; and any person acting as governor shall receive the compensation attached to the office of governor."

The Constitution (article 5, § 24) also prohibits either the Governor or the Lieutenant Governor from holding any other office "during the term for which he shall have been elected."

■ It must be conceded that if the Lieutenant Governor is a member of the executive department of the government and as such may perform administrative duties fixed by the Legislature, then the Constitution does not forbid the Legislature from fixing a salary to compensate him for the performance of such duties. The only provision of the Constitution bearing upon the question as to the amount of his compensation is that which provides for compensating him for his services as President of the Senate. This provision does not limit the amount of his salary as Lieutenant Governor, and cannot be construed so as to prevent the Legislature from fixing an annual salary for his services, aside from compensating him as President of the Senate, which position he fills by virtue of his office. The Legislature has the authority to fix the compensation and define the duties of an officer unless prohibited therefrom by the Constitution. It is the exclusive judge as to the amount of such salary and the extent of the duties to be performed. As was said by the Supreme Court of Indiana, in the case of Walker v. Dunham, Secretary of State, 17 Ind. 483:

"The compensation and duties of an officer may be increased or diminished, in the absence of constitutional restrictions, at the will of the Legislature."

See, also, Gilbert v. Board of Commissioners, et al., 8 Blackf. (Ind.) 81; State v. Hyde, 129 Ind. 302, 28 N. E. 186, 13 L. R. A. 79; Butler v. Pennsylvania, 10 How. (51 U. S.) 402, 13 L. Ed. 472; Cochnower v. United States, 248 U. S. 405, 39 S. Ct. 137, 63 L. Ed. 328.

■ There being no such restrictions contained in the Constitution, in so far as the Lieutenant Governor is concerned, the conclusion is inevitable that his salary, aside from his compensation as President of the Senate, may be fixed, and his duties enlarged by the Legislature, as defined in chapters 4 and 257, supra, provided he is a member of the executive department of the government.

At this point it is perhaps well to determine to which department of the government the Lieutenant Governor belongs; that is, whether he is a member of the executive or legislative department. An examination of the various articles of the Constitution, as shown by the original copy on file, as well as the published copy, reveals the fact that provision for the election of the Lieutenant Governor is found in article 5 thereof, which article is designated as "Executive." An inspection of the Convention Journal, which contains a record of the proceedings of the Constitutional Convention which formulated the present Constitution, discloses the fact that the various sections which appear in article 5, entitled "Executive," were reported by the committee appointed to make provision for the executive department of the government. Furthermore, when article 5 was reported by the Committee on Revision, Arrangement, and Phraseology of the Convention, it was reported under the heading of "Executive" and so designated. Convention Journal, p. 932. In announcing to the public the provision of the new Constitution, and the changes contained therein, it is stated in the Convention Journal, at page 967 under the heading "In the Executive Department," that:

"The changes in this department are unimportant, being chiefly these: The governor and lieutenant-governor are elected for four, instead of three years, to correspond to the biennial session of the legislature. Neither of these officers is eligible more than four years in any period of eight years, nor to any other office during the term for which he has been elected. These provisions are not in the old Constitution. * * * "

This statement is interesting and is significant in that it at least signifies the intention of the framers of the Constitution to classify the Lieutenant Governor as a member of the executive department of the government.

The Constitution expressly provides that no person who is charged with official duties under one of the departments of the government shall exercise any of the functions of another "except as in this constitution expressly provided." Article 3, § 1. It is significant that the Constitution does, in a later article (article 5, § 21), provide that "the lieutenant-governor shall, by virtue of his office, be president of the senate. * * * " It is apparent that the Lieutenant Governor is one official to whom the exception found in article 3, § 1, was intended to, and does, apply. He, a member of the executive department, is given specific authority to preside over the Senate, one of the legislative bodies. The membership of the Senate is composed of Senators elected by the people. The total membership is limited to fifty persons, each being elected for a term of four years. Arti

cle 4, §§ 2, 3. The qualifications prescribed for a Senator are different from those prescribed for a Lieutenant Governor. The Lieutenant Governor is not a member of the Senate, and cannot be a member thereof, but because of his official position, he becomes the presiding officer thereof and has such powers only in connection therewith as are expressly given him by the Constitution. The powers thus given him are not sufficient to classify him as a member of the legislative department of the government. The number of Senators is limited by the Constitution to fifty, and the number of Representatives is limited to one hundred. If it was intended that the presiding officer of the Senate should be a member of the legislative department, it would seem that he would have been selected from its membership, as is the Speaker of the House of Representatives from its membership.

While the fact that certain administrative duties have been imposed upon the Lieutenant Governor by the Legislature at various times since the adoption of the present Constitution is not sufficient to make the acts under attack constitutional, if they are otherwise unconstitutional, yet such a fact is interesting and instructive. It may also be interesting to note that the Legislature has for many years made provision for the payment to him of a sum in addition to the compensation which he received as President of the Senate. Burns' Ann. St. Ind. 1926, § 7723. As early as 1872, by an act of the Legislature, he was made a member of the board of equalization, an administrative body, and provision was made for the payment to him of a per diem to compensate him for such services. He was also made a member of the same board by the Legislature of 1881 and provision made for his compensation (Acts Ind. 1881, Sp. Sess., c. 96, § 146).

The precise question as to whether or not the Lieutenant Governor is a member of the executive department or of the legislative department of the state government was presented to the highest court in the state of Kentucky, in the case of Rouse et al. v. Johnson et al., 234 Ky. 473, 28 S.W.(2d) 745, 747, 70 A. L. R. 1077. The Constitution of the state of Kentucky provides for the three departments, viz. legislative, executive, and judicial. The Lieutenant Governor is, by the Constitution of such state, by virtue of his office, made the President of the Senate, and provision is made therein for his compensation as such. The provisions of the Constitution, with reference to the Lieutenant Governor, are very similar to those contained in the Constitution of the state of Indiana. The court, in the Kentucky case, held that the Lieutenant Governor is a member of the executive department of the government of that state, and, in discussing the question as to whether or not he is a member of the executive or legislative department of the government, said:

" * * * It might be well to note that state Constitutions do not delegate power to the Legislature of the state, which body has all power unless prohibited or limited by the Constitution. In other words, state Constitutions unlike the federal one only prescribe inhibitions and limitations upon legislative power and that unless the legislative body is so prescribed and limited by the Constitution its authority is unlimited and it may enact upon any subject in the mode and manner it sees proper." Cooley's Constitutional Limitations (8th Ed.) vol. 1, p. 96.

"With equal propriety and relevancy it should also be remembered that the express mentioning in, and conferring by, a constitutional provision of named powers and duties without a further provision confining them to those so expressly named, does not create an inhibition upon the legislature from prescribing and annexing other duties appertaining to the same department of government, including powers and duties of a constitutional officer if that be the subject-matter upon which the Constitution has spoken without limiting the Legislature to what it (the Constitution) has prescribed. * * * "

It was also held in the case of Craig v. O'Rear, 199 Ky. 553, 251 S. W. 828, that the Legislature had authority to confer executive power upon the Lieutenant Governor of that state. See Bridges v. Shallcross, 6 W. Va. 562; State v. Bellamy, 60 Okl. 62, 158 P. 897; State of Ohio v. Kennon, 7 Ohio St. 546; Southern Pacific Co. v. Bartine (C. C.) 170 F. 725.

It is said in 36 Cyc. at page 855 that "the lieutenant-governor is an executive officer provided for by the Constitution. * * * "

The legislation in question (chapters 4 and 257, supra) did not create a new office to be filled by the Lieutenant Governor, but simply enlarged his duties in the department of the government of which he is a member, being administrative in character, which duties he is eligible to perform without violating any of the provisions of the Constitution of the state of Indiana, and he is entitled to be compensated therefor as provided in chapter 119, supra, he being unquestionably a member of the executive department of the gov-

ernment and engaged in the performance of administrative duties therefor. The Legislature having spoken as to the value of his services, and having fixed his salary, the court has no authority to interfere with the payment thereof by the defendant Williamson, as auditor, whose duty it is, under the law, to issue a warrant in payment thereof. Walker v. Dunham, Sec'y of State, supra.

In the case of Crosman v. Nightingill, 1 Nev. 323, the controller of state, A. W. Nightingill, was mandated to issue a warrant payable to the Lieutenant Governor of that state for services which he performed as warden of the state prison by virtue of a statute of that state. The provisions of the Constitution of the state of Nevada pertaining to the Lieutenant Governor are similar to those of Indiana, he being President of the Senate by virtue of the provisions of the Constitution and his compensation as such is fixed by the Constitution, but no provision is made in the Constitution for his salary as Lieutenant Governor.

The acts in question are each valid and do not contravene the provisions of the Constitution of the state of Indiana. The bill of complaint will, therefore, be dismissed for want of equity.

A decree will be prepared accordingly.